**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

ISIDRO RECIO, DARIO ALMONTE, RADHAMES RODRIGUEZ, JOSE PICHARDO DE LA CRUZ, and ULRICH ZIMERMAN HERNANDEZ on behalf of themselves and all others similarly situated who were employed by D'Almonte Enterprises Parking Garage Inc., Ramcell Parking Corporation, IB Parking Lot, Inc., 119 Parking Lot Corporation, Rafael Almonte, Dayhana Martinez, Kelvin Mejia, Ariel Reyes, and Miguel Velazquez,

Case No.:

                                    Plaintiffs,

Class Action Complaint

      -against-

<u>Jury Trial Demanded</u>

D'ALMONTE ENTERPRISES PARKING GARAGE INC., RAMCELL PARKIG CORPORATION, IB PARKING LOT, INC., 119 PARKING LOT CORPORATION, RAFAEL ALMONTE, DAYHANA MARTINEZ, KELVIN MEJIA, ARIEL REYES, and MIGUEL VELAZQUEZ,

                                 Defendants,

Plaintiffs Isidro Recio ("Recio"), Dario Almonte ("D. Almonte"), Radhames Rodriguez ("R. Rodriguez"), Jose Pichardo de la Cruz ("de la Cruz"), Ulrich Zimerman Hernandez ("Hernandez") (collectively, the "Named Plaintiffs"), individually and on behalf of the putative class (collectively "Plaintiffs"), by and through their attorneys Arenson, Dittmar & Karban, as and for their complaint against Defendants D'Almonte Enterprises Parking Garage, Inc. ("D'Almonte Enterprises Parking"), Ramcell Parking Corporation ("Ramcell"), IB Parking Lot, Inc. ("IB Parking"), and 119 Parking Lot Corporation ("119 Parking"), (collectively, the "Corporate Defendants"), and Rafael Almonte ("R. Almonte"), Dayhana Martinez ("Martinez"), Kelvin Mejia ("Mejia"), Ariel Reyes ("Reyes"), and Miguel Velazquez ("Velazquez") (the "Individual

1

Defendants"), (collectively "Defendants"), upon personal knowledge as to themselves and upon information and belief, allege as follows:

## NATURE OF THE ACTION

1.  This action arises out of Defendants' failure to pay Plaintiffs the minimum wage, overtime compensation, spread-of-hours pay; Defendants' improper taking of wage deductions, and Defendants' failure to provide Plaintiffs with Wage Theft Protection Act ("WTPA") statements and notices, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the New York Labor Law, N.Y. Lab. Law. §§ 190 *et seq.*, § 650, *et al.* ("NYLL").

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b).

3.  This Court is empowered to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202.

4.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), because all or a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York.

## PARTIES

5.  Plaintiffs are individuals residing in the State of New York who were Defendants' employees.

6.  Upon information and belief, Defendant D'Almonte Enterprises Parking is a business incorporated in the State of New York, with its principal place of business located at 2080 Jerome Avenue, Bronx, New York, 10453.

7.  Upon information and belief, Defendant Ramcell is a business incorporated in the State of New York, with its principal place of business located at 1484 Jerome Avenue, Bronx, New York, 10452.

8.  Upon information and belief, Defendant IB Parking is a business incorporated in the State of New York, with its principal place of business located at 941 Garrison Avenue, Bronx, New York, 10472.

9.  Upon information and belief, Defendant 119 Parking Lot Corp. is a business incorporated in the State of New York, with its principal place of business located at 1420 Cromwell Avenue, Bronx, New York, 10452.

10. The Corporate Defendants are in the parking garage business and operate in the State of New York.  Defendants are the owners and operators of at least five parking lots and garages located at (1) 2080 Jerome Avenue, Bronx, New York, 10453, (2) 1484 Jerome Avenue, Bronx, New York, 10452, (3) 941 Garrison Avenue, Bronx, New York, 10472, (4) 1420 Cromwell Avenue, Bronx, New York 10452, and (5) 2355 Webster Avenue, Bronx New York, 10458.

11. Upon information and belief, the Corporate Defendants have had gross sales or business revenue in excess of $500,000 annually.

12. Upon information and belief, the Corporate Defendants are engaged in interstate commerce.

13. Upon information and belief, Defendant Rafael Almonte is a resident of the State of New York and at all relevant times was the Chief Executive Officer of Defendants D'Almonte Parking, Ramcell Parking, and 119 Parking Lot Corp., closely-held corporations as defined by the New York Business Corporation Law.

14. Upon information and belief, Defendant D. Martinez is a resident of the State of New York and at all relevant times was an owner of Defendant Ramcell Parking Corporation, a closely-held corporation as defined by the New York Business Corporation Law.

15. Upon information and belief, Defendant Mejia is a resident of the State of New York and at all relevant times was the Chief Executive Officer of Defendant IB Parking, a closely-held corporation as defined by the New York Business Corporation Law.

16. Upon information and belief, Defendant Velazquez is a resident of the State of New York and has been the Chief Executive Officer of Defendant 119 Parking Lot Corp., a closely-held corporation, as defined by the New York Business Corporations Law.

17. Upon information and belief, Defendant A. Reyes is a resident of the State of New York and has been a supervisor and manager working for the Corporate Defendants and Defendant Rafael Almonte.

18. Upon information and belief, Defendant D. Martinez is Defendant Rafael Almonte's wife.

19. Upon information and belief, Defendant Mejia is Defendant Rafael Almonte's nephew

## COLLECTIVE ALLEGATIONS

20. The Named Plaintiffs bring the Second Claim in this action against Defendants as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all other similarly situated current and former non-exempt employees who have worked,

and/or continue to work, for Defendants at any time during the three years prior to the filing of this action through the entry of judgment in this action ("the FLSA Collective").

21. At all relevant times, the Named Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job requirements, have been governed by similar pay practices and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them overtime compensation.

22. Defendants are liable under the FLSA for failing to properly compensate Named Plaintiffs at the overtime rate for all hours worked over 40 each week, and as such, notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

23. The FLSA Collective consists of numerous similarly situated current and former employees of Defendants who were subject to the conduct complained of herein and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the action.  Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## CLASS ALLEGATIONS

24. This action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

25. Named Plaintiffs bring this action on behalf of themselves and a class consisting of all similarly situated persons working as parking attendants, who perform and/or have performed work for Defendants parking, moving, and retrieving vehicles, taking and providing tickets, collecting fees from patrons, and other non-managerial parking garage-

related work, between December 3, 2015 and the filing of this complaint (the "Putative Class").

26. The Putative Class is so numerous that joinder of all members is impracticable.

27. The precise size of the Putative Class is unknown to Plaintiffs.  The facts on which the calculation of that number can be based are presently within the sole control of Defendants.  In addition, the names of all potential members of the Putative Class are not known.

28. Upon information and belief, the size of the Putative Class is in excess of forty (40) individuals.

29. Defendants failed to pay Plaintiffs the minimum wage for large employers in New York.  In 2015, the minimum wage for large employers was $8.75 per hour.  In 2016, the minimum wage for large employers was $9.00 per hour.  In 2017, the minimum wage for large employers was $11.00 per hour.  In 2018, the minimum wage for large employers was $13 per hour.  From 2019 to the present, the minimum wage for large employers has been $15.00 per hour.  See, NYLL §§ 651(1) and (1)(a)(i).

30. The questions of law and fact common to the Putative Class predominate over any questions affecting only individual members.

31. The claims of the Named Plaintiffs are typical of the claims of the Putative Class.  Such claims whether Defendants:

   a. failed to pay Plaintiffs the minimum wage under the NYLL:
   b. failed to pay Plaintiffs overtime compensation under the NYLL:
   c. failed to provide Plaintiffs spread-of-hours pay;
   d. failed to provide Plaintiffs with wage notices and statements as required by the Wage Theft Prevention Act ("WTPA");
   e. maintained a policy or practice of taking illegal deductions from Plaintiffs' pay;
   f. are liable for damages claimed hereunder, including but not limited to compensatory damages, interest, liquidated damages, costs and disbursements and attorneys' fees; and
   g. should be enjoined from engaging in such practices in the future.

32. Named Plaintiffs and their counsel will fairly and adequately protect the interests of the Putative Class.

33. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## STATEMENT OF FACTS
### Facts Common to All Plaintiffs

34. Since at least approximately 2015, Defendants have employed numerous individuals as parking attendants and other occupations related to the parking garage business, whose work included and includes parking, moving, and retrieving vehicles, taking and providing tickets, collecting fees from patrons, and other non-managerial parking garage-related work.

35. At all times, Defendants employed at least 11 employees, and thus Defendants were "large employer[s]," as defined in NYLL § 652(1)(a)(i), which sets forth the minimum wage to be furnished to each employee by "every employer of eleven or more employees." *Id*.

36. Defendants are Plaintiffs' direct or joint employers under the FLSA and the NYLL.

37. Upon information and belief, the Individual Defendants managed and exercised control over Plaintiffs, either directly or through agents.

38. Upon information and belief, the Individual Defendants have had the power to, and have made decisions for, the Corporate Defendants, including hiring and firing, determining Plaintiffs' pay rate, supervising and controlling Plaintiffs and their work schedules and conditions of work and employment, maintaining employment records, and making decisions including the assignment of work and contractual matters.

39.   By way of example only, Defendant Rafael Almonte hired Plaintiff Recio, and instructed Plaintiff Recio about the training process before Plaintiff Recio could commence working on his own.  Defendant Rafael Almonte also hired Plaintiff D. Almonte and Plaintiff de la Cruz.  By way of further example only, Defendant Rafael Almonte fired Plaintiff R. Rodriguez.

40.   Defendant Rafael Almonte often visited the garage sites located at (1) 2080 Jerome Avenue, Bronx, New York, 10453, (2) 1484 Jerome Avenue, Bronx, New York, 10452, (3) 941 Garrison Avenue, Bronx, New York, 10472, (4) 1420 Cromwell Avenue, Bronx, New York and (5) 2355 Webster Avenue.  When he visited the parking garages, he often gave instructions to the workers about how they should perform their jobs.

41.   Defendant Rafael Almonte instructed Plaintiffs concerning the type of customers that should not be permitted to rent parking spaces in Defendants' garages, saying: "I don't want to rent to Black or Puerto Rican people here" or "Who let the Black guy in?"

42.   By way of further example only, often Defendant Rafael Almonte would tell Plaintiffs to move cars in the parking garage.

43.    Defendant Rafael Almonte would regularly tell Plaintiffs that if he told them to do something, they needed to do it, because he was the owner.  To illustrate, Defendant Rafael Almonte would say, "I'm the boss here – you need to do what I say."

44.   Defendant Rafael Almonte directed work schedule changes, and sometimes communicated those changes to Plaintiffs by phone.  Often, Defendant A. Reyes would assist Defendant Rafael Almonte in communicating work schedule changes to Plaintiffs.

45. Defendant Rafael Almonte maintained a central office located at 2080 Jerome Avenue. Plaintiffs who worked at locations other than 2080 Jerome Avenue would, at times, pick up their weekly pay at Defendants' central office at 2080 Jerome Avenue.

46. The cash collected each night at the Defendants' various garage locations was picked up the following day by one of Defendants' employees and brought to the central office at 2080 Jerome Avenue.

47. Upon information and belief, Defendant Almonte interviewed prospective workers for all of the locations at the central office located at 2080 Jerome.

48. The Individual Defendants controlled the manner and method by which Plaintiffs were paid.  For example, Defendant Rafael Almonte and Defendant A. Reyes would give Plaintiffs information about pay raises or the lack thereof.  By way of example only, Defendant A. Reyes would hand Plaintiff Recio his cash payments.

49. Upon information and belief, Defendant Velazquez was a supervisor at one or more of the garage locations listed herein who worked for Defendant Rafael Almonte. Upon information and belief, Defendant Velazquez followed and communicated to the workers the instructions he received from Defendant Rafael Almonte.

50. Defendant Velazquez would go to each of the garage locations to check on the workers.

51. Upon information and belief, Defendant A. Reyes, in her capacity as a manager/supervisor, actively participated in the unlawful payment method.

52. Upon information and belief, the Individual Defendants have actively managed, supervised, directed, and continue to manage, supervise, and direct the business and operations of the Corporate Defendants either directly or through agents.

53. Upon information and belief, the Individual Defendants have maintained records of Plaintiffs' employment and pay, either directly or through agents.

54. Upon information and belief, Individual Defendants acted directly or indirectly in the interest of Corporate Defendants.

55. In sum, the Individual Defendants exercised complete dominion and control over the Corporate Defendants.

56. Upon information and belief, all Corporate Defendants constitute a single integrated enterprise that is majority-owned, operated and controlled by Defendant Rafael Almonte.

57. Upon information and belief, and based on the facts set forth herein, the operations of the Corporate Defendants are interrelated.

58. Regardless of the location at which Plaintiffs worked, or which of the Corporate Defendants nominally employed them, if Plaintiffs encountered an issue at work, such as requesting a raise, usually they would report the issue to Defendant Rafael Almonte or his agent, Defendant A. Reyes.

59. By way of example only, Plaintiff R. Radhames would question Defendant A. Reyes why he was not paid the minimum wage.

60. Based on the facts stated herein, the Corporate Defendants share common management – Defendant Rafael Almonte – and common supervisors, including Defendant A. Reyes.

61. Upon information and belief, and based on the facts stated herein, the labor relations of the Corporate Defendants are centrally controlled.

62. By way of further example only, Plaintiffs would sometimes work at different garage sites depending on where Defendant Rafael Almonte decided he needed coverage. Defendant

Rafael Almonte, Defendant Reyes or other supervisors directed Plaintiffs to work at garage sites different from the sites to which they were usually assigned.

63. Upon information and belief, the Individual Defendants set up a common management structure for the Corporate Defendants with Defendant Rafael Almonte retaining supervisory authority over all garage locations listed herein.

64. By way of example only, the Corporate Defendants shared common employees, pay methods and policies, and were overseen by Defendant Rafael Almonte.

65. Upon information and belief, during the relevant claim period, Defendant Rafael Almonte provided information to Plaintiffs about their pay, regardless of the location where they were working.  Additionally, Defendant A. Reyes would provide Plaintiffs information about their pay, and would sometimes inform Plaintiffs that the information had come from Defendant Rafael Almonte, regardless of the location where they were working.

66. Typically, Defendants paid Plaintiffs in cash once a week,

67. Defendants maintained common pay practices at all of their garages, including but not limited to (a) paying their employees in cash; (b) paying the same hourly rate for all hours worked, including hours over 40 per week; and (c) deducting cash from the envelopes containing Plaintiffs' weekly pay to pay for damage to customer vehicles and customer underpayments.

68. Based on the facts set forth herein and upon information and belief, the Corporate Defendants share common ownership and financial control.

69. Upon information and belief, at all relevant times, Defendants acted as Plaintiffs' employers within the meaning contemplated by 29 U.S.C. § 203(d), N.Y. Lab. Law § 651(6), and N.Y.C. Admin. Code § 20-912.

70.   Upon information and belief, at all relevant times, Plaintiffs were employees of Defendants within the meaning contemplated by 29 U.S.C. § 203(e) N.Y. Lab. Law § 651(5), and N.Y.C. Admin. Code § 20-912.

71.   Upon information and belief, at all relevant times, the activities of the Corporate Defendants constituted "enterprises" within the meanings contemplated by 29 U.S.C. §§ 203(r), (s).

72.   Upon information and belief, the Corporate Defendants are "enterprise[s] engaged in commerce" within the meaning contemplated by 29 U.S.C. §§ 201 *et seq.* and the cases interpreting it.

73.   Upon information and belief, the Individual Defendants managed and exercised control over Named Plaintiffs, either directly or through agents.

74.   Upon information and belief, Plaintiffs were regularly required to perform work for Defendants without receiving proper minimum wages and overtime compensation as required by 29 U.S.C. §§ 201 *et seq.* and N.Y. Lab. Law. §§ 190 *et seq.*

75.   Upon information and belief, payments made to Plaintiffs by Defendants constitute "wages" as that term is defined under 29 U.S.C. § 203(m) and N.Y. Lab. Law § 651.

76.   Upon information and belief, Defendants engaged in a regular pattern and practice of making unlawful deductions from the earned wages of Plaintiffs in violation of 29 U.S.C. § 203 and N.Y. Lab. Law §§ 193, 196-d.

77.   Upon information and belief, Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain proper and complete timesheets or payroll records.

78.  As part of their regular business practices, Defendants intentionally, willfully, and

repeatedly have engaged in a policy, pattern, and/or practice of violating the FLSA and the

NYLL.  This policy, pattern, and/or practice has included but is not limited to:

a.  failure to pay Plaintiffs the proper minimum wage for each
hour worked;

b.  failure to pay Plaintiffs proper overtime compensation at
the rate of one-and-one-half times the regular rate of pay
for work in excess of forty (40) hours per workweek;

c.  failure to pay Plaintiffs spread-of-hours pay for each
workday longer than ten (10) hours;

d.  failure to provide Plaintiffs with adequate wage notices
pursuant to the Wage Theft Protection Act; and

e.  improperly deducting wages from Plaintiffs' pay.

79.  Any Plaintiffs whose claims under the New York Labor Law expired between March 20,

2020, up to and including November 3, 2020, receive the benefit of the tolling of the time

limit to commence, file, or serve any legal action, notice, motion, or other process or

proceeding, pursuant to Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8) and

the nine subsequent executive orders that extended the toll, Executive Order (A. Cuomo)

Nos. 202.14, 202.28, 202.38, 202.48, 202.55, 202.55.1, 202.60, 202.67, 202.72 [9 NYCRR

8.202.14, 8.202.28, 8.202.38, 8.202.48, 8.202.55, 8.202.55.1, 8.202.60, 8.202.67,

8.202.72]), which were in effect at the time of the aforementioned expiration.

**Plaintiff Isidro Recio**

80.  Defendants employed Plaintiff Recio from approximately February 2014 through

approximately March 28, 2020.

81.  From approximately December 2015, through approximately December 2018, Plaintiff

Recio typically worked approximately 8 hours per day, from approximately 10 p.m. to 6

a.m., 6 days a week.

82. From approximately January 2019, through approximately June 2019, Plaintiff Recio typically worked approximately 12 hours per day, from approximately 10 p.m. to approximately 10 a.m., for 6 days a week.

83. From approximately July 2019, through approximately November 2019, Plaintiff Recio typically worked approximately 8 hours a day, from approximately 10 p.m. to 6 a.m., for 6 days a week.

84. From approximately December 2019 through approximately March 28, 2020, Plaintiff Recio typically worked approximately 8 hours a day, from approximately 10 p.m. through approximately 6 a.m., for 3 days a week.

85. From approximately February 2014 through December 2018, Plaintiff Recio worked 16-hour days approximately 6 times each year.

86. From approximately January 2015 through approximately December 2015, Defendants paid Plaintiff Recio $7.50 per hour.  The relevant minimum wage for large employers in 2015 was $8.75 per hour.

87. From approximately January 2016 through approximately December 2016, Defendants paid Plaintiff Recio approximately $9.00 per hour.  The relevant minimum wage for large employers in 2016 was $9.00 per hour.

88. From approximately January 2017, through approximately December 2017, Defendants paid Plaintiff Recio approximately $10.50 per hour.  The relevant minimum wage for large employers in 2017 was $11.00 per hour.

89. From approximately January 2018, through approximately December 2018, Defendants paid Plaintiff Recio approximately $12.00 per hour.  The relevant minimum wage for large employers in 2018 was $13.00 per hour.

90.   From approximately January 2019, through approximately December 2019, Defendants paid Plaintiff Recio approximately $13.50 per hour.  The relevant minimum wage for large employers in 2019 was $15.00 per hour.

91.   From approximately January 2020, through approximately March 2020, Defendants paid Plaintiff Recio approximately $15.00 per hour.  The relevant minimum wage for large employers in 2020 was $15.00 per hour.

92.   Throughout the period of his employment, Defendants paid Plaintiff Recio in cash on a weekly basis.

93.   For all years except 2016 and 2020, Defendants failed to pay Plaintiff Recio the proper minimum wage under the NYLL.

94.   Throughout his employment, each week Defendants unlawfully deducted approximately $30, on average, from Plaintiff Recio's wages to cover underpayments by customers.

95.   Throughout his employment, Defendants deducted wages from Plaintiff Recio's pay to pay for damage to customer vehicles.  In total, Defendants deducted approximately $5,000 from Plaintiff Recio's wages.

96.   The very first week of work, Defendant Rafael Almonte told Plaintiff Recio that Defendant Rafael Almonte was not responsible for the damage to customer cars, and that Plaintiff Recio had to pay to fix any vehicle damage on his own.  By way of example only, when Plaintiff Recio asked Defendant Rafael Almonte about how to respond to a customer whose vehicle was damaged, Rafael said "no, no, no you fix that on your own, I'm not responsible for these problems."

97.   By way of further example only, after Defendant Rafael Almonte instructed Plaintiff Recio to handle any vehicle damage on his own, Plaintiff Recio paid $250 to repair an Acura in

approximately 2015; $450 to replace a bumper on a black Toyota in approximately 2016; $350 to repair a white Honda in approximately 2017; and $850 to repair a Subaru in approximately 2018.

98.  Defendants typically deducted money from Plaintiff Recio's weekly wages to cover the alleged damage to vehicles, typically in the amount of $150 per week, on average. Typically, Defendants placed a written note in the envelope containing the cash payment for Plaintiff D. Recio's weekly wages that stated the amount being deducted from the wages that week to pay for the damage to the vehicles.

99.  Typically, Defendants placed the ticket that was the subject of the alleged customer underpayment with a handwritten notation stating the amount of the deduction from Plaintiff Recio's weekly pay due to the customer underpayment in the envelope containing Plaintiff D'Almonte's weekly cash payment.

100. Throughout his employment, Defendants failed to pay Plaintiff Recio the proper overtime compensation at the rate of one-and-one-half times the regular rate of pay for work in excess of forty (40) hours per workweek in violation of the FLSA and the NYLL.

101. Throughout his employment, Defendants failed to pay Plaintiff Recio the proper spread-of-hours pay for each workday longer than ten (10) hours.

102. Throughout his employment, Defendants failed to provide Plaintiff Recio with the documentation required by the Wage Theft Prevention Act.

**Plaintiff Dario Almonte**

103. Defendants employed Plaintiff D. Almonte from approximately May 2, 2015 through approximately February 20, 2021.

104. From approximately May 2, 2015 through approximately May 2019, Plaintiff D. Almonte typically worked for 8 hours a day, from 2 p.m. through approximately 10 p.m., 6 days a week.

105. From approximately June 2017 through July 2017 and approximately June 2018 through July 2018, Plaintiff D. Almonte typically worked a 16-hour shift from Saturday to Sunday, starting his shift on Saturday afternoons at approximately 2 p.m. and ending his shift on Sunday mornings at approximately 6 a.m. When he worked this double shift, Plaintiff D. Almonte had to return at 2 p.m. on Sunday and work from approximately 2 p.m.  to approximately 10 p.m.

106. From approximately June 2019 through approximately January 2020, Plaintiff D. Almonte typically worked 8 hours per day, from approximately 2 p.m. to 10 p.m., 6 days a week twice a month and for 5 days a week twice a month.

107. From approximately February 2020 through approximately April 2020, Plaintiff D. Almonte typically worked 8 hours a day, from approximately 2 p.m. to 10 p.m., 7 days a week.

108. From approximately May 2020 through approximately February 20, 2021, Plaintiff D. Almonte typically worked 8 hours a day, from approximately 2 p.m. to 10 p.m., 5 days a week.

109. From approximately May 2, 2015 through approximately December 2016, Defendants paid Plaintiff D. Almonte approximately $9 per hour.  The relevant minimum wage for large employers in 2015 was $8.75 per hour.  The relevant minimum wage for large employers in 2016 was $9.00 per hour.

110. From approximately January 2017 through approximately December 2017, Defendants paid Plaintiff D. Almonte approximately $10.50 per hour.  The relevant minimum wage for large employers in 2017 was $11.00 per hour.

111. From approximately January 2018 through approximately December 2018, Defendants paid Plaintiff D. Almonte approximately $12.00 per hour.  The relevant minimum wage for large employers in 2018 was $13.00 per hour.

112. From approximately January 2019 through approximately December 2019, Defendants paid Plaintiff D. Almonte approximately $13.50 per hour.  The relevant minimum wage for large employers in 2019 was $15.00 per hour.

113. From approximately January 2020 through approximately February 20, 2021, Defendants paid Plaintiff D. Almonte approximately $15.00 per hour.  The relevant minimum wage for large employers in 2020 and 2021 was $15.00.

114. Defendants paid Plaintiff D. Almonte in cash.

115. From approximately January 2017 through approximately December 2019, Defendants failed to pay Plaintiff D. Almonte the proper minimum wage under the NYLL.

116. Throughout his employment, Defendants deducted approximately $40 per week, on average, from Plaintiff D. Almonte's wages to cover underpayments by customers.

117. On average, approximately 3 times a year, Defendants deducted $100 from his weekly wages to cover alleged underpayments by customers.  Typically, Defendants placed the ticket that was the subject of the alleged customer underpayment with a handwritten notation on the ticket stating the amount of the deduction from Plaintiff D. Almonte's weekly pay in the envelope containing Plaintiff D'Almonte's cash payment.

118. Defendants deducted D. Almonte's wages to cover alleged damage to customer vehicles. In total, Defendants deducted approximately $15,000 from D. Almonte's wages to cover damage to customer vehicles.  Typically, these deductions were made by deducting the money from Plaintiff D. Almonte's weekly cash payment.  At times, Defendant Rafael Almonte or Defendant A. Reyes would instruct Plaintiff D. Almonte to pay the customer directly for the vehicle damage.

119. By way of example only, in 2016, Defendants deducted $1,800 from Plaintiff D. Almonte's wages to pay for a dented Toyota.  In 2017, Defendants deducted $3,000 to pay for a damaged BMW.  In 2018, Defendants deducted $2,500 from Plaintiff D. Almonte's wages to pay for a dented van and $1,800 to cover damage to a Mustang.

120. Defendants typically deducted approximately$200 per week, on average,  from Plaintiff D. Almonte's weekly wages to cover the alleged damage to vehicles.  Defendants placed a written note in the envelope containing the cash payment for Plaintiff D. Almonte's weekly wages that stated the amount being deducted from the wages that week to pay for the damage.

121. Throughout his employment, Defendants failed to pay Plaintiff D. Almonte the proper overtime compensation at the rate of one-and-one-half times the regular rate of pay for work in excess of forty (40) hours per workweek.

122. Throughout his employment, Defendants failed to pay Plaintiff D. Almonte the proper spread-of-hours pay for each workday longer than ten (10) hours.

123. Throughout his employment, Defendants failed to provide Plaintiff D. Almonte with the documentation required by the Wage Theft Prevention Act ("WTPA").

**Plaintiff Radhames Rodriguez**

124. Defendants employed Plaintiff R. Rodriguez from approximately January 2015 through approximately March 13, 2021.

125. From approximately January 2015 through approximately March 13, 2021, Plaintiff R. Rodriguez typically worked 8 hours per day, from 2 p.m. to 10 p.m.  He typically worked this shift 7 days a week, 3 times a month and 6 days a week, 1 time a month.

126. From approximately January 2015 through approximately March 13, 2021, for approximately 3 months on average each year, typically during the Summer months, Plaintiff R. Rodriguez worked double shifts, totaling 16 hours per shift, from approximately 6 a.m. through approximately 10 p.m., approximately 4 days a week. During the periods when Plaintiff Rodriguez worked these double shifts, he also worked 8 hours a day, three days a week. Plaintiff R. Rodriguez typically worked these double shifts to cover for workers out on vacation.

127. From approximately January 2015 through approximately December 2016, Defendants paid R. Rodriguez approximately $9 per hour.  The relevant minimum wage for large employers in 2015 was $8.75 per hour.  The relevant minimum wage for large employers in 2016 was $9.00 per hour.

128. From approximately January 2017, through approximately December 2017, Defendants paid R. Rodriguez approximately $10.50 per hour.  The relevant minimum wage for large employers in 2017 was $11.00 per hour.

129. From approximately January 2018 through approximately December 2018, Defendants paid R. Rodriguez approximately $12.00 per hour.  The relevant minimum wage for large employers in 2018 was $13 per hour.

130. From January 2019 through approximately December 2019, Defendants paid R. Rodriguez approximately $13.50 per hour.  The relevant minimum wage for large employers in 2019 was $15.00 per hour.

131. From approximately January 2020 through approximately March 13, 2021, Defendants paid R. Rodriguez approximately $15.00 per hour.  The relevant minimum wage for large employers in 2020 and 2021 was $15.00 per hour.

132. For the years 2017, 2018, and 2019, Defendants failed to pay Plaintiff R. Radhames the proper minimum wage under the NYLL.

133. Defendants paid Plaintiff R. Rodriguez in cash.

134. Throughout his employment, Defendants deducted money from Plaintiff Rodriguez's wages to cover alleged damage to customer vehicles.

135. Defendants typically deducted money from Plaintiff Rodriguez's weekly wages to cover the alleged damage to vehicles in the amount of $175 per week.

136. In total, Defendants deducted approximately $15,000 from Rodriguez's wages to cover alleged damage to customer vehicles.

137. Throughout his employment, Defendants deducted money from Rodriguez's wages to cover customer underpayments.

138. Defendants typically deducted money from Plaintiff Rodriguez's weekly wages to cover the alleged customer underpayments in the amount of approximately $80 per week on average.

139. Plaintiff Rodriguez saw Defendant R. Almonte take cash out of his [Plaintiff Rodriguez's weekly pay] to pay for either damage to a customer's vehicle or a customer underpayment.

140. Defendants placed a written note in the envelope containing the cash payment for Plaintiff Rodriguez's weekly wages that stated the amount being deducted from the wages that week to pay for the damage to a car or cars.

141. Typically, Defendants placed the ticket that was the subject of the alleged customer underpayment with a handwritten notation on the ticket stating the amount of the deduction from Plaintiff D. Almonte's weekly pay in the envelope containing Plaintiff D'Almonte's cash payment.

142. Throughout his employment, Defendants failed to pay Plaintiff R. Rodriguez the proper overtime compensation at the rate of one-and-one-half times the regular rate of pay for work in excess of forty (40) hours per workweek.

143. Throughout his employment, Defendants failed to pay Plaintiff R. Rodriguez the proper spread-of-hours pay for each workday longer than ten (10) hours.

144. Throughout his employment, Defendants failed to provide Plaintiff R. Rodriguez with the documentation required by the Wage Theft Prevention Act.

**Plaintiff Jose Pichardo de la Cruz**

145. Defendants employed Plaintiff de la Cruz from approximately June 2013 through approximately November 8, 2020.

146. From approximately 2015 through approximately May 2018, Plaintiff de la Cruz typically worked twelve hours per day, from 6 am to 6 pm, for 5 days a week.

147. From approximately June 2018 through approximately November 8, 2020, Plaintiff de la Cruz typically worked 8 hours per day, from 6 a.m. to 2 p.m., for 6 days a week, 3 weeks a month, and for 5 days a week, one week a month.

148. From approximately January 2015 through December 31, 2015, Defendants paid Plaintiff de la Cruz $8.00 per hour.  The relevant minimum wage for large employers in 2015 was $8.75 per hour.

149. From approximately January 2016 through approximately December 2017, Defendants paid Plaintiff de la Cruz $8.00 per hour.  The relevant minimum wage for large employers in 2016 was $9.00 per hour.  The relevant minimum wage for large employers in 2017 was $11.00 per hour.

150. From approximately January 2018 through approximately December 2018, Defendants paid Plaintiff de la Cruz $9.00 per hour.  The relevant minimum wage for large employers in 2018 was $13.00 per hour.

151. From approximately January 2019, through approximately June 2019, Defendants paid Plaintiff de la Cruz a wage of $10 per hour.  From approximately July 2019 through approximately October 2019, Defendants paid Plaintiff de la Cruz a wage of $12 per hour. From approximately November 2019 through approximately November 8, 2020, Defendants paid Plaintiff de la Cruz a wage of $13 per hour.  The relevant minimum wage for large employers in 2019 was $15.00 per hour.  The relevant minimum wage for large employers in 2020 was $15.00 per hour.

152. Throughout his employment, Defendants failed to pay Plaintiff de la Cruz the proper minimum wage under the NYLL.

153. Throughout his employment, Defendants deducted approximately $30 per week, on average, from Plaintiff de la Cruz's wages to cover alleged underpayments by customers.

154. Throughout his employment, Defendants deducted money from Plaintiff de la Cruz's wages to cover alleged damage to customer vehicles.  Defendants deducted approximately $3,000 per year from Plaintiff de la Cruz's wages.

155. Typically, Defendants placed the ticket that was the subject of the alleged customer underpayment with a handwritten notation on the ticket stating the amount of the deduction from Plaintiff de la Cruz's's weekly pay in the envelope containing Plaintiff de la Cruz's cash payment.

156. During the period of approximately December 2015 through approximately November 8, 2020, Defendants failed to pay Plaintiff de la Cruz the proper minimum wage under the NYLL

157. Throughout his employment, Defendants failed to pay Plaintiff de la Cruz the proper overtime compensation at the rate of one-and-one-half times the regular rate of pay for work in excess of forty (40) hours per workweek.

158. Throughout his employment, Defendants failed to pay Plaintiff de la Cruz the proper spread-of-hours pay for each workday longer than ten (10) hours.

159. Throughout his employment, Defendants failed to provide Plaintiff de la Cruz with the documentation required by the Wage Theft Prevention Act.

**Plaintiff Ulrich Zimerman Hernandez**

160. Defendants employed Plaintiff Hernandez from approximately March 1, 2016 through approximately October 2017.

161. From approximately March 2016 through approximately December 2016, Plaintiff Hernandez typically worked 12 hours per day, from 6 a.m. to 6 p.m. or 6 p.m. to 6 a.m., 4 days a week.

162. From approximately January 2017 through approximately May 2017, Plaintiff Hernandez typically worked 8 hours a day, from 6 a.m. to 2 p.m., for 5 days a week.

163. From approximately June 2017 through approximately October 2017, Plaintiff Hernandez typically worked 12 hours a day, from 6 a.m. to 6 p.m., for 5 days a week.

164. Throughout his employment, Defendants paid Plaintiff Hernandez a wage of $9 per hour. The relevant minimum wage in 2016 was $9.00 per hour. The relevant minimum wage for large employers in 2017 was $11.00 per hour.

165. Defendants paid Plaintiff Hernandez in cash.

166. In 2017, Defendants failed to pay Plaintiff Hernandez the proper minimum wage under the NYLL.

167. Throughout his employment, Defendants deducted approximately $40 per week, on average, from Plaintiff Hernandez's weekly pay to make up for alleged underpayments by customers.  Often, Defendant A. Reyes would hand him his cash wages along with copies of the tickets from customers who allegedly had not paid the correct parking fees. Defendant A. Reyes would say, "This is your pay.  We took out the amount from the tickets that were not paid."

168. Typically, when Defendants deducted money from Plaintiff Hernandez's weekly wages for alleged customer underpayments, Defendants placed the customer ticket at issue in the envelope containing Plaintiff Hernandez's weekly cash payment with a notation stating the amount being deducted written on the ticket.

169. Defendants deducted money from Plaintiff to cover alleged damage to customer vehicles.

170. In approximately the Summer of 2016, Defendants Rafael Almonte and Ariel Reyes instructed Plaintiff Hernandez to pay $1,500 to a customer for damage to a grey Range

Rover.  Plaintiff Hernandez asked Defendant Rafael Almonte for help paying for the vehicle damage.  Defendant Rafael Almonte responded, "That's not my problem.  You guys have to take care of that yourself."  Plaintiff Hernandez also asked Defendant A. Reyes for help paying for the vehicle damage, but Defendant A. Reyes would not help him.

171. In approximately March 2017, Defendants Rafael Almonte and Ariel Reyes instructed Plaintiff Hernandez to pay $2,000 to a customer for damage to a silver Toyota.

172. Plaintiff Hernandez was supposed to pay another customer $400 for vehicle damage, but upon information and belief, once the customer found out that Plaintiff Hernandez had to pay him directly, the customer accepted only $100 from Plaintiff Hernandez.

173. Throughout his employment, Defendants failed to pay Plaintiff Hernandez the proper overtime compensation at the rate of one-and-one-half times the regular rate of pay for work in excess of forty (40) hours per workweek.

174. Throughout his employment, Defendants failed to pay Plaintiff Hernandez the proper spread-of-hours pay for each workday longer than ten (10) hours.

175. Throughout his employment, Defendants failed to provide Plaintiff Hernandez with the documentation required by the Wage Theft Prevention Act.

## FIRST CAUSE OF ACTION
### New York Labor Law – Unpaid Minimum Wage

176. Plaintiffs repeat, re-allege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

177. The minimum wage provisions set forth in the NYLL § 652 and related regulations apply to Defendants as employers and Plaintiffs as employees.

178. Defendants failed to maintain proper employment records as required by N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.6, and the New York Labor Law, N.Y. Lab. Law §§ 195(4) and 661.

179. Defendants were required to pay Plaintiffs at a rate not less than the minimum wage under the NYLL for all hours worked.

180. Defendants willfully failed to pay Plaintiffs the minimum wage for each hour worked.

181. By virtue of Defendants' failure to pay Plaintiffs the minimum wage for all hours worked, Defendants have willfully violated NYLL §§ 650 *et seq.* and the related regulations issued by the New York State Department of Labor, including but not limited to 12 N.Y.C.R.R. § 142-2.1.

182. Each of the Corporate Defendants is liable for the violations of the NYLL under the integrated enterprise theory of liability.

183. As employers, the Individual Defendants are personally liable for the violations of the NYLL.

184. As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to N.Y. Lab. Law §§ 650 *et seq.*

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Unpaid Overtime Compensation

185. Plaintiffs repeat, re-allege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

186. Named Plaintiffs have consented to be parties to this action pursuant to 29 U.S.C. § 216(b).

187. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this complaint.

188. The overtime wage provisions set forth in the FLSA, 29 U.S.C. § 201 *et seq.*, and related federal regulations, apply to Defendants as employers and Plaintiffs as employees.

189. Defendants failed to maintain proper employment records as required by the FLSA and 29 C.F.R. 516.

190. Defendants willfully, knowingly, and repeatedly refused to pay proper overtime compensation at the statutory rate of one-and-one-half times the regular rate of pay for work in excess of forty (40) hours per workweek, as required by the FLSA.

191. Because of the Defendants' willful violations of the FLSA, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255.

192. Each of the Corporate Defendants is liable for the violations of the FLSA under the integrated enterprise theory of liability.

193. As employers, the Individual Defendants are personally liable for the violations of the FLSA.

194. As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 § U.S.C. § 216(b).

### **THIRD CAUSE OF ACTION**
### **New York Labor Law – Unpaid Overtime Compensation**

195. Plaintiffs repeat, re-allege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

196. The overtime provisions set forth in Article 19 of the NYLL and related regulations apply to Defendants as employers and Plaintiffs as employees.

197. Defendants failed to maintain proper employment records as required by N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.6, and the New York Labor Law, N.Y. Lab. Law §§ 195(4) and 661.

198. The regulations accompanying the New York Labor Law, N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2, require an employer to pay an employee overtime "at a wage rate of one and one-half times the employee's regular rate."

199. The New York Labor Law, N.Y. Lab. Law § 663, provides that "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of such underpayments, together with costs and such reasonable attorney's fees."

200. Plaintiffs worked more than forty (40) hours per week while working for Defendants.

201. Defendants failed to pay Plaintiffs overtime compensation at a rate of not less than one and one-half times the regular rate of pay for all hours worked in excess of forty (40) hours per workweek, as required by the NYLL

202. Consequently, by failing to pay Plaintiffs the overtime compensation for work they performed after the first forty (40) hours worked in a week, Defendants violated N.Y. Lab. Law § 663 and N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

203. Defendants' failure to pay the required overtime compensation, as set forth above, was willful within the meaning of N.Y. Lab. Law §§ 198 and 663.

204. Each of the Corporate Defendants is liable for the violations of the NYLL under the integrated enterprise theory of liability.

205. As employers, the Individual Defendants are personally liable for the violations of the NYLL.

206. As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to N.Y. Lab. Law §§ 650 *et seq.*

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Spread-of-Hours Pay**

207. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

208. Pursuant to 12 N.Y.C.R.R. § 142-2.4, Defendants were required to pay Plaintiffs an extra hour of pay for any split-shift or day in which their "spread of hours" exceeded ten (10) hours. The relevant spread is the time between the beginning and end of an employee's workday including all working time, meal breaks, and time off duty, as defined by 12 N.Y.C.R.R. § 142-2.18.

209. Plaintiffs worked shifts with a spread of hours in excess of ten (10) hours per day but were never paid an extra hour of pay for each day on which they worked over ten (10) hours.

210. Defendants' failure to pay the required wages as set forth above was willful within the meaning of N.Y. Lab. Law §§ 198 and 663.

211. Defendants failed to maintain proper employment records as required by 12 N.Y.C.R.R. § 142-2.6 and N.Y. Lab. Law §§ 195(4) and 661.

212. Plaintiffs are entitled to the unpaid spread-of-hours pay as required by the New York Labor Law.

213.  Each of the Corporate Defendants is liable for the violations of the NYLL under the integrated enterprise theory of liability.

214.  As employers, the Individual Defendants are personally liable for the violations of the NYLL.

215.  As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to N.Y. Lab. Law §§ 650 *et seq.*

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Unlawful Deductions from Wages**

216.  Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

217.  Pursuant to N.Y. Lab. Law § 193(1)(b), employers are prohibited from making deductions from the wages of their employees, subject to specific enumerated exceptions.

218.  Labor Law 193(1)(b) explicitly prohibits an employer from deducting monies from the wages of an employee except as required by law or as "expressly authorized in writing" by and "for the benefit of the employee."  The statute specifies the deductions that an employee may authorize: "payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee."  Though an employee may authorize an employer to take away or subtract wages, the language of the subdivision limits the types of deductions to those enumerated and "similar payments."

219. Defendants' deductions were not "similar payments."

220. Plaintiffs did not "authorize" Defendants to deduct their wages.

221. Furthermore, Labor Law § 193(2) provides that: "No employer shall make any charge against wages *or require an employee to make any payment by separate transaction* unless such charge or payment is permitted as a deduction from wages under the provision of subdivision one of this section."  (emphasis added).  Subdivision (2) was added to the statute to "prohibit wage deductions by indirect means where direct deduction would violate the statute."  (Mem. Of State Dept. of Labor in Support of L. 1974, ch. 160, 1974 McKinney's Session Laws of N.Y., at 1957).

222. Defendants required their employees to make payments to customers for vehicle repairs. Defendants' requiring of their employees to pay customers is not a payment permitted as a deduction from wages under Labor Law § 193(1).

223. By improperly making deductions from Plaintiffs' wages for purposes other than those enumerated exceptions, Defendants violated N.Y. Lab. Law § 193.

224. Defendants' improper deductions from Plaintiffs' wages was willful within the meaning of N.Y. Lab. Law §§ 198 and 663.

225. Defendants failed to maintain proper employment records as required by 12 N.Y.C.R.R. § 142-2.6 and N.Y. Lab. Law §§ 195(4) and 661.

226. Plaintiffs are entitled to recover the improper deductions from their weekly pay.

227. Each of the Corporate Defendants is liable for the violations of the NYLL under the integrated enterprise theory of liability.

228. As employers, the Individual Defendants are personally liable for the violations of the NYLL.

229. As a result of the unlawful acts of Defendants, Plaintiffs have been deprived the monies deducted from their weekly pay in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to N.Y. Lab. Law §§ 650 *et seq.*

## SIXTH CAUSE OF ACTION
### New York Labor Law – Wage Theft Prevention Act Violation

230. Plaintiffs repeat, re-allege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

231. Upon information and belief, Defendants failed to furnish Plaintiffs with the wage notices and statements required by NYLL §§ 195(1) and (3).

232. Upon information and belief, Defendants' failure to furnish Plaintiffs with the notices and statements required by NYLL §§ 195(1) and (3) was willful and intentional.

233. NYLL § 195(1) requires that employers furnish employees at the time of hire with a notice containing, *inter alia*: the rate or rates of pay and the basis thereof; the regular pay day designated by the employer; the name of the employer; any "d/b/a" names used by the employer; the address of the employer's main office or principal place of business; and the telephone number of the employer.

234. NYLL § 195(3) requires that employers furnish employees at the time of payment with a statement listing gross wages, deductions from their pay, net wages, and upon an employee's request, an explanation of the computation of wages.

235. NYLL § 195(4) requires, *inter alia*, that employers establish and maintain, for at least six (6) years, payroll records showing the hours worked, gross wages, deductions, and net wages for each employee.

236.  NYLL § 661 requires that employers maintain, *inter alia*, true, and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

237.  12 N.Y.C.R.R. § 142-2.6 requires that employers establish, maintain, and preserve, for six (6) years, weekly payroll records showing, *inter alia*, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

238.  12 N.Y.C.R.R. § 142-2.7 requires that employers furnish employees at the time of payment with a statement listing hours worked, rates paid, gross wages, deductions from their pay, net wages, and any allowance claimed as part of the minimum wage.

239.  Defendants failed to provide Plaintiffs with any of the requisite notices and statements described in the foregoing paragraphs.

240.  Each of the Corporate Defendants is liable for the violations of the NYLL under the integrated enterprise theory of liability.

241.  As employers, the Individual Defendants are personally liable for the violations of the NYLL.

242.  As a result of Defendants' failure to furnish Plaintiffs with wage notices pursuant to NYLL § 195(1), Plaintiffs are each entitled to statutory penalties up to a maximum of $5,000, as well as attorneys' fees and costs, pursuant to NYLL § 198(1)(b).

243.  As a result of Defendants' failure to furnish Plaintiff with wage statements pursuant to NYLL § 195(3), Plaintiffs are each entitled to statutory penalties up to a maximum of $5,000, as well as attorneys' fees and costs, pursuant to NYLL § 198(1)(d).

## PRAYER FOR RELIEF

**WHEREFORE,** the Named Plaintiffs, on behalf of themselves and, as applicable, all other members of the FLSA Collective and Putative Class, request that this court grant the following relief:

(1) Certification of this action as a collective pursuant to 29 U.S.C. § 216(b);

(2) That, at the earliest possible time, Named Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have been at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, employed by Defendants as non-exempt employees. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper overtime compensation;

(3) Certification of this action as a class action pursuant to F.R.C.P. Rule 23 on behalf of the members of the Putative Class and appointing the Named Plaintiffs and their counsel to represent the Putative Class;

(4) Designation of Named Plaintiffs as representatives of the Putative Class, and counsel of record as Class Counsel;

(5) A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

(6) Appropriate equitable and injunctive relief to remedy Defendants' violations of the FLSA and the NYLL;

(7) An award of monetary damages to be determined at trial for wages owed, unpaid overtime, illegal deductions and spread-of-hours compensation, penalties, liquidated damages and all other monies owed to Plaintiffs;

(8) An award of prejudgment and post-judgment interest;

(9) An award of attorneys' fees and costs of this action;

(10) An injunction against the Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

(11) Such other and further relief as the Court deems just and proper.

Dated: New York, New York
        July 19, 2022

Respectfully submitted,

**ARENSON, DITTMAR & KARBAN**

By: S/Steven Arenson
Steven Arenson
steve@adklawfirm.com
Avi Mermelstein
avi@adklawfirm.com
200 Park Avenue, Suite 1700
New York, New York 10166
Tel:    (212) 490-3600
Fax:   (212) 682-0278

*Attorneys for Plaintiffs*