```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ISIDRO RECIO, et al.,                           :
                                                :
                    Plaintiffs,                 :    OPINION & ORDER
                                                :
         -v.-                                   :    22 Civ. 6153 (RA) (GWG)
                                                :
                                                :
D'ALMONTE ENTERPRISES PARKING                   :
GARAGE, INC., et al.,                           :
                                                :
                    Defendants.                 :
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Isidro Recio, Dario Almonte, Radhames Rodriguez, Jose Pichardo de la Cruz, and Ulrich Zimerman Hernandez, on behalf of themselves and a putative class and proposed collective, have sued defendants D'Almonte Enterprises Parking Garage, Inc., Ramcell Parking Corporation, IB Parking Lot, Inc., 119 Parking Lot Corporation, Rafael Almonte, Dayhana Martinez, Kelvin Mejia, Ariel Reyes, and Miguel Velazquez, asserting that the defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and New York State Labor Law wage-and-hour provisions. See Complaint, filed July 19, 2022 (Docket # 1) ("Comp."); First Amended Complaint, filed Nov. 14, 2022 (Docket # 16) ("Am. Comp."). Before the Court is plaintiffs' motion for conditional approval of a collective action pursuant to 29 U.S.C. § 216(b).[1] For the reasons stated below, plaintiffs' motion is granted.

---

[1] See Notice of Motion for Conditional Certification of the FLSA Collective, filed Mar. 10, 2023 (Docket # 33) ("Mot."); Memorandum of Law, filed Mar. 10, 2023 (Docket # 34) ("Mem."); Declaration of Ramon Muñoz, filed Mar. 10, 2023 (Docket # 35) ("Muñoz Decl."); Declaration of Isidro Recio, filed Mar. 10, 2023 (Docket # 36) ("Recio Decl."); Declaration of Dario Almonte, filed Mar. 10, 2023 (Docket # 37) ("Almonte Decl."); Declaration in Support of Motion, filed Mar. 10, 2023 (Docket # 39) ("Goldstein Decl."); Memorandum of Law, filed Apr. 21, 2023 (Docket # 46) ("Opp."); Declaration of Ariel Reyes, filed Apr. 21, 2023 (Docket # 48); Declaration of Dayhana Martinez, filed Apr. 21, 2023 (Docket # 49); Publication Order, filed Apr. 28, 2023 (Docket # 50);

I. BACKGROUND

    A. Allegations in the Amended Complaint and the Instant Motion

The named plaintiffs in this case allege they are or were employees of defendants, see Am. Comp. ¶ 5, which are New York parking garages and their owners and operators, id. ¶ 10. The defendants have employed workers as "parking attendants and other occupations related to the parking garage business, whose work included . . . parking, moving, and retrieving vehicles[;] taking and providing tickets[;] collecting fees from patrons[;] and other non-managerial parking garage-related work." Id. ¶ 38. All of the corporate defendants make up a "single integrated enterprise" majority-owned and operated by Rafael Almonte, and typically plaintiffs would report work issues to Rafael Almonte or Reyes. Id. ¶¶ 60, 62-64, 66.

Plaintiffs were paid in cash once a week, id. ¶ 70, and defendants required employees to work 15-30 minutes "off-the-clock" every day they worked, id. ¶ 71. Defendants deducted cash from the envelopes containing their weekly pay based on damage to vehicles or customer underpayments, id. ¶ 71, 98-102, 120-124, 139-144, 156-158, 170-176, and they did not pay proper minimum wage or overtime wage rates, id. ¶¶ 78, 92-94, 104, 113-116, 125, 131-134, 145, 151-153, 160, 164-167, 169, 177.

Plaintiffs filed this suit on July 19, 2022. See Comp. They now move for approval of an FLSA collective and of a proposed notification to putative members of the collective pursuant to Section 216(b). See Mot.

Plaintiffs' proposed FLSA collective consists of:

> Each current and former employee of D'ALMONTE ENTERPRISES PARKING GARAGE INC., RAMCELL PARKING CORPORATION, IB PARKING LOT, INC., 119 PARKING LOT CORPORATION, RAFAEL ALMONTE, DAYHANA MARTINEZ, KELVIN MEJIA, ARIEL REYES, and/or MIGUEL VELAZQUEZ, who was/is employed in the position of parking garage attendant during the time

---

Memorandum of Law in Reply, filed May 5, 2023 (Docket # 51) ("Reply Br."); Affirmation in Support, filed May 5, 2023 (Docket # 52) ("Goldstein Reply. Decl.").

period from July 19, 2019 through the present. Managers, supervisors, officers, executives, managerial or administrative personnel are not part of this group.

Notice of Pendency, annexed as Exhibit A. to Goldstein Decl. (Docket # 39-1) ("Proposed Not.") at 1.

B. Plaintiffs' Declarations

Plaintiffs have provided declarations from Recio, Dario Almonte, and opt-in plaintiff Ramon Muñoz. All three state they worked as parking garage attendants and that in that role they "parked, moved, and retrieved vehicles[;] took and provided tickets[;] collected fees from [customers][;] and performed other non-managerial parking garage-related work." Recio ¶ 4; accord Almonte Decl. ¶ 4; Muñoz Decl. ¶ 4. Recio worked at three of defendants' garages from February 2014 to March 2020. Recio Decl. ¶¶ 2-3. Dario Almonte worked at two of defendants' garages from May 2015 to February 2021. Almonte Decl. ¶¶ 2-3. Muñoz has worked at four of defendants' garages since October 2017. Muñoz Decl. ¶ 2-3.

All of the declarants state that Rafael Almonte and Reyes oversaw and directed their work. See Recio ¶¶ 16, 27-31; Almonte Decl. ¶¶ 12, 25-29; Muñoz Decl. ¶¶ 22-25. Muñoz states, however, that Reyes "left approximately two to three years ago," and his new manager is Miguel Garcia, who provides his schedule, and that the schedule is given to Garcia by Rafael Almonte. Muñoz Decl. ¶ 24.

All of the declarations state the defendants required them to work more than 40 hours per week and never paid them "time and a half" for the overtime hours. Thus, Recio alleges that he generally worked 8 hours a day, 6 days a week from December 2015 through September 2017, from May 2018 through November 2018, and from January 2019 through July 2019. Recio Decl. ¶¶ 6-8, 11, 13. Dario Almonte generally worked 8 hours a day, 6 days a week from May 2015 to February 2019, 6 days a week on occasion from August 2019 to January 2020, and seven days a week from February 2020 through April 2020. See Almonte Decl. ¶¶ 6, 8, 9. Also, Dario Almonte would "pick

up approximately 4 extra hours here and there throughout the week" from March to June 2019. Id. ¶ 7. Muñoz worked eight hours a day, six days a week one week a month from March 2018 to January 2020 and from May 2020 to February 2022, and he worked eight hours a day for seven days a week during a one-week period within February to March 2022 and again for two weeks of April 2022. Muñoz Decl. ¶¶ 8, 10-11. Muñoz worked four hours a day for five days a week from October 2017 to February 2018 but was only paid for three hours of work per day. Id. ¶ 6. Sometimes Recio, Dario Almonte, and Muñoz would work additional overtime hours when assigned to cover other employees. See Recio Decl. ¶¶ 7, 10, 16; Almonte Decl. ¶ 12; Muñoz Decl. ¶ 10. In Recio's case, this could happen as often as once a week, which could require Recio to work a full additional eight-hour shift immediately following a regularly scheduled shift. Recio Decl. ¶¶ 7, 10, 16. Recio, Dario Almonte, and Muñoz never received overtime pay for hours worked beyond 40 but were instead paid at a flat rate. Id. ¶¶ 5, 24-25; Almonte Decl. ¶ 5, 20; Muñoz Decl. ¶¶ 5, 18.

These statements are corroborated in some instances by pay and hour records that were apparently prepared by the employer and given to the employee. See Exhibits A, B, and C to Recio Decl. (Docket ## 36-1, 36-2, 36-3); Exhibit A. to Almonte Decl. (Docket # 37-1); Exhibit A to Muñoz Decl. (Docket # 35-1). These records reflect that the same hourly rate was paid to the recipients even when the weekly hours exceeded 40 hours per week. See id.

All of the declarations state the defendants required them to work some "off-the-clock" time, for which the defendants did not pay them at all. Defendants required Recio, Dario Almonte, and Muñoz to work "approximately 30 minutes per day 'off the clock'" ahead of the "recorded" start time of their shifts and another 30 minutes after the end of each shift "to compile a handwritten inventory of the number of cars in the lot on daily tickets, the amount of money collected for those cars, and match the tickets to those cars." Recio Decl. ¶ 27; accord Almonte Decl. ¶ 24; Muñoz Decl. ¶ 20. Defendants did not pay them for the "off the clock" time. Recio Decl. ¶ 27; Almonte Decl. ¶ 24;

Muñoz Decl. ¶ 21. Muñoz added that if "an employee do[es] not come in early prior to their recorded shift start time, that employee generally gets in trouble with management." Muñoz Decl. ¶ 20.

All of the declarations state that at least during some periods of their employment, they were paid less than the statutory minimum wage applicable at the time. For reference, the applicable minimum wage rate for large employers in New York is: $8.75 through 2015, $9.00 through 2016, $11.00 through 2017, $13.00 through 2018, and $15.00 from 2019 to the present. See N.Y. Lab. Law § 652. Per hour, Recio was paid: $7.50 through 2015, see Recio Decl. ¶ 18; $9.00 through 2016, id. ¶ 19; $ 10.50 through 2017, id. ¶ 20; $12.00 through 2018, id. ¶ 21; $13.50 through 2019, id. ¶ 22; and $15.00 from January through March 28, 2020, id. ¶ 23. Per hour, Dario Almonte was paid: $9.00 from May 2, 2015 through December 2016, see Almonte Decl. ¶ 14; $10.50 through 2017, id. ¶ 15; $12.00 through 2018, id. ¶ 16; $13.50 through 2019, id. ¶ 17; and $15.00 from January 2020 through February 20, 2021, id. ¶ 18. Per hour, Muñoz was paid: $12.00 from September 2017 through December 2018, see Muñoz Decl. ¶ 14; $13.50 from January 2019 through February 2019, id. ¶ 15; $10.00 from March 2020 through May 2020, id. ¶ 16; and $15.00 from June 2020 onwards, id. ¶ 17.

Recio said his experience was the same regardless of which garage he worked at and that his co-workers were "always paid the same way" as him. See Recio Decl. ¶ 32. Recio identified five of those co-workers by name ("Eduardo Gonzales, Paulino, Luis, . . . Juan, . . . and Simon"), physical appearance, and age as people "also not being paid overtime and off-the-clock wages." Id. ¶ 33. Dario Almonte made a similar assertion and identified two prior co-workers by name ("Paulino" and "Juan"), physical appearance, and age as people "also not being paid for the overtime hours worked" and "not paid for their off-the[-]clock work." See Almonte Decl. ¶¶ 30-31. Muñoz added, "I personally witnessed my co-workers also work over forty hours a week, and I learned from speaking with them that they also were also not paid the overtime premium." See Muñoz Decl. ¶ 18. Muñoz

identified what may be three different co-workers by name ("Paolino Jonathan and Luis"), and for two of those people ("Paolino" and "Luis") by name, physical description, and age, as people who "were also not being paid for overtime work and off-the-clock work." Id. ¶ 28. Additionally, Muñoz's declaration stated that "[m]y co-workers and I often speak among ourselves about the Defendants' failure to pay us overtime wages. Throughout my time working for Defendants, there have been approximately 40 to 50 other workers total working at Defendants' garages." Id.

## II. GOVERNING LAW

29 U.S.C. § 216(b) of the FLSA provides, in pertinent part:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

While the statute does not prescribe any procedures for approval of collective actions, section 216(b) has long been construed to grant authority to a district court to permit notices to be sent to potential plaintiffs informing them of the option to join the suit. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs"); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice, . . . it makes more sense, in light of the 'opt-in' provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case.") (citations omitted). "Orders authorizing notice are often referred to as orders 'certifying' a collective action, even though [the] FLSA does not contain a certification requirement." Wood v. Mike Bloomberg 2020, Inc., 484 F. Supp. 3d 151, 156 (S.D.N.Y. 2020) (citation omitted). The act of "certifying" a collective action, however, means only that this Court has "exercise[d] . . . [its] discretionary power . . . to facilitate the sending of notice to

potential class members." Myers v. The Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010) (internal quotation marks and citation omitted), cert. denied, 565 U.S. 930 (2011).  The approval of a collective action thus amounts to a "'case management' tool for district courts to employ in 'appropriate cases.'"  Id. (quoting Hoffmann-La Roche Inc., 493 U.S. at 169, 174).

"The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action." Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005).  Accordingly, "no showing of numerosity, typicality, commonality, and representativeness need be made."  Lewis v. Nat'l Fin. Sys., Inc., 2007 WL 2455130, at *2 (E.D.N.Y. Aug. 23, 2007) (citation omitted).  Furthermore, "[i]n contrast to the procedures for a class action under Fed. R. Civ. P. 23," in a collective action, "only plaintiffs who affirmatively opt in can benefit from the judgment."  Indergit v. Rite Aid Corp., 2010 WL 2465488, at *3 (S.D.N.Y. June 16, 2010) (internal quotation marks and citation omitted).

The Second Circuit has endorsed a "two-step process" for treatment of a proposed collective action:

> At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law.  [Myers,] 624 F.[3]d at 555. At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs.  Id.

Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 540 (2d Cir. 2015).

Thus, "[t]he threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'"  Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (quoting 29 U.S.C. § 216(b)).

As a result, at this preliminary stage, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Young, 229 F.R.D. at 54 (citation omitted); accord Guillen v. Marshalls of MA, Inc., 841 F. Supp. 2d

797, 800 (S.D.N.Y. 2012). Therefore, a court "should not weigh the merits of the underlying claims" at the conditional approval stage, and "must take care to avoid even the appearance of judicial endorsement of the merits of the action." Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (internal quotation marks and citations omitted). Plaintiffs need only make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Hoffman, 982 F. Supp. at 261. Nonetheless, "the factual showing, even if modest, must still be based on some substance." Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010).

Once employees have opted in and after discovery is complete, "courts conduct a more stringent 'second tier' analysis upon a full record to decide whether the additional plaintiffs are similarly situated to the original plaintiffs." Indergit, 2010 WL 2465488 at *4; accord Pefanis v. Westway Diner, Inc., 2010 WL 3564426, at *4 (S.D.N.Y. Sept. 7, 2010). If the court determines at that stage that the opt-in plaintiffs are not similarly situated to the named plaintiff, then "[t]he action may be 'de-certified' . . . and the opt-in plaintiffs' claims may be dismissed without prejudice." Myers, 624 F.3d at 555 (citations omitted).

III.   REQUEST FOR CONDITIONAL APPROVAL OF THE COLLECTIVE ACTION

Plaintiffs maintain they and their proposed collective were all subject to a common policy under which defendants have routinely paid less than the statutory minimum wage rate and have failed to compensate them appropriately for overtime. See Mem. at 10-12. Their three declarations each attest to this practice and indicate that they knew of others facing the same wage-and-hour violations. Recio Decl. ¶¶ 32-33; Almonte Decl. ¶¶ 30-31; Muñoz Decl. ¶¶ 18, 28. Defendants argue that the three declarations' references to co-workers experiencing the same violations are not sufficient because "absent verifications from the individuals, the Plaintiffs' statements are self-serving and unreliable." See Opp. at 13. This attack, however, carries no weight because "at this

procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Diaz v. New York Paving Inc., 340 F. Supp. 3d 372, 382 (S.D.N.Y. 2018) (quoting Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)); see also id. at 383 ("Because the affidavits corroborate each other and plausibly describe a common illegal policy, we accept as true plaintiffs' allegations for purposes of deciding this motion.").

Not surprisingly, defendants cite no case law to support their argument that the Court should assess the plaintiffs' credibility. And ample case law holds that consideration "of the merits is absolutely inappropriate" at the conditional approval stage. Shajan v. Barolo, Ltd., 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010); accord Gorey v. Manheim Servs. Corp., 2010 WL 5866258, at *4 (S.D.N.Y. Nov. 10, 2010) ("Defendants may ultimately be correct that no unlawful policy exists . . . , but that decision should wait" until after the conditional approval decision.).

Defendants further argue that plaintiffs have not met their burden to provide non-conclusory facts to support the existence of similarly situated persons in their collective. See Opp. at 9-19. In a similar vein, defendants argue that plaintiffs have not demonstrated a "factual nexus" between themselves and the proposed collective. See id. at 9, 11, 15.[2]

We reject these arguments. Plaintiffs have provided two declarations from named plaintiffs and one from an opt-in plaintiff that each describe the declarants' titles and duties and allege that defendants failed to pay them minimum wage and overtime and also required them to work some time entirely uncompensated on a regular basis. See generally Recio Decl.; Almonte Decl.; Muñoz Decl. Further, each of the declarations identifies other "co-workers" who they observed experiencing

---

[2] Because of a typographical error in plaintiffs' papers, defendants argue that plaintiffs are improperly trying to include in the proposed collective "Managers, supervisors, officers, executives, managerial or administrative personnel." See Opp. at 16. But plaintiffs have since made clear that they do not seek to include this group. See Goldstein Reply Decl. ¶¶ 4-7.

the same violations, and the declarations identify these other persons by first name, physical description, and approximate age. See Recio Decl. ¶¶ 32-33; Almonte Decl. ¶¶ 30-31; Muñoz Decl. ¶¶ 18, 28. Lastly, Muñoz adds that he "personally witnessed" his co-workers "work over forty hours a week" and based on speaking with them learned that "they also were [ ] not paid" overtime rates. Muñoz Decl. ¶ 18. Courts routinely find comparable showings sufficient at this stage. See, e.g., Sealock v. Covance, Inc., 2018 WL 2290698, at *2 (S.D.N.Y. May 18, 2018) (approving a motion for preliminary certification of a collective action where plaintiff, "through declarations from himself and other" people with the same job, "offers sufficient general proof" of a common FLSA claim); Pettenato v. Beacon Health Options, Inc., 425 F. Supp. 3d 264, 282 (S.D.N.Y. 2019) (five declarations that each describe a "declarant's job duties, job titles, and hours worked, as well as [the defendant's] policy of denying him or her – and other employees classified as exempt who performed similar duties – overtime pay . . . provide a sufficient evidentiary foundation for conditional certification."); Hong v. Haiku @ WP Inc., 582 F. Supp. 3d 117, 127 (S.D.N.Y. 2022) ("Courts in this Circuit have commonly authorized the sending of collective action notices where plaintiff includes some probative information regarding similarly situated employees such as their names, their duties and their hours worked or where plaintiff provides affidavits from such employees setting forth the pertinent facts.") (quoting Qing Gu v. T.C. Chikurin, Inc., 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014)).

Defendants argue that plaintiffs have not sufficiently specified the duties of the persons who were purported victims of defendants' violations. Opp. at 12. While the declarations are not specific in describing the duties of the other "co-workers," there is ample evidence to conclude that the defendants' treated "parking garage attendants" — the only title sought to be included in the collective — in a similar manner in light of the fact that the declarants all held that job title and all were victims of the alleged policy. The duties of the parking garage attendant job are described

similarly in that each declarant states that he "parked, moved, and retrieved vehicles[;] took and provided tickets[;] collected fees from customers[;] and performed other non-managerial parking garage-related work."  Recio ¶ 4; accord Almonte Decl. ¶ 4; Muñoz Decl. ¶ 4.  Two of the declarants state that they personally, along with co-workers, had to work "off the clock" and were required to take inventory, total money, and match tickets.  See Almonte Decl. ¶¶ 24-25; Muñoz Decl. ¶ 20.  The "co-workers" — whatever their specific duties were — did not receive overtime pay.  See Almonte Decl. ¶¶ 30-31; Muñoz Decl. ¶ 28.  These practices of defendants, attested to under oath, are sufficient to conclude that parking garage attendants were subject to similar FLSA violations.  Of course, "[t]he mere fact that plaintiffs have different job titles . . . is not relevant to the question of whether they are 'similarly situated,'" and "whether variance of job duties precludes collective treatment is more appropriately analyzed at the decertification stage of an FLSA collective action, not at the conditional certification stage."  Diaz, 340 F. Supp. 3d at 384-85 (quoting Taveras v. D & J Real Estate Mgmt. II, LLC, 324 F.R.D. 39, 44-45 (S.D.N.Y. 2018)).  The critical point here is that, regardless of specific job duties, the plaintiffs have provided evidence of a common practice of not paying overtime to and requiring off-the-clock work from the parking garage attendants.

Plaintiffs have thus carried their "modest" burden in demonstrating they are similarly situated to other non-managerial garage attendants, and thus we agree that this case may proceed as a collective action.  Accordingly, notice should be distributed to other parking garage attendants as proposed by plaintiffs.

IV.  PROPOSED NOTICE

"Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains broad discretion over the form and content of the notice."  Martin v. Sprint/united Mgmt. Co., 2016 WL 30334, at *15 (S.D.N.Y. Jan. 4, 2016) (internal quotation marks omitted) (citing Chhab v. Darden Rest., Inc., 2013 WL 5308004, at *15 (S.D.N.Y. Sept. 20, 2013)).  "By monitoring

preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed." Hoffmann-La Roche Inc., 493 U.S. at 172.

When determining the particulars of the notice, courts are "guided by the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants." Elmajdoub v. MDO Dev. Corp., 2013 WL 6620685, at *4 (S.D.N.Y. Dec. 11, 2013) (internal quotation marks omitted) (quoting Guzelgurgenli v. Prime Time Specials, Inc., 883 F.Supp.2d 340, 356 (E.D.N.Y. 2012)).

There appear be two remaining points in dispute.[3]  First, defendants request that the notice disclose information about the fee arrangement by plaintiffs' attorneys. Opp. at 21. As to this point, plaintiffs proposed notice states:

> The Plaintiffs are currently represented by Avi Mermelstein, Esq. and Anna Goldstein, Esq., of Arenson, Dittmar & Karban, 420 Lexington Avenue, Suite 1402, New York, New York 10170, telephone number (212) 490-3600. The Defendants are represented by Diana Seo, Esq. of Seo Law Group, PLLC.
> If you wish, you may choose to be represented by Plaintiffs' counsel in this case. You will not be required to pay any fee for services provided by Plaintiffs' counsel Arenson, Dittmar & Karban.
> However, you also have the right to consult with an attorney of your own choosing about this matter, and if you wish to be represented by counsel other than Plaintiffs' counsel, you may retain another attorney. You will be responsible for paying that attorney, and that attorney must notify the Court of your representation.
>
> . . .
>
> If you sign and return the Consent to Joinder form attached to this Notice, you are agreeing to designate the class representatives, Plaintiffs ISIDRO RECIO, DARIO ALMONTE, RADHAMES RODRIGUEZ, JOSE PICHARDO DE LA CRUZ, and ULRICH ZIMERMAN HERNANDEZ as your agents to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and

---

[3] There is no longer any dispute about the inclusion of employees who were not garage attendants. See Opp. at 20-21; see footnote 2 above.

> costs, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by Plaintiffs will be binding on you if you join this lawsuit.
>     Plaintiffs have an agreement with their attorneys that the attorneys are being paid on a contingency fee basis, which means that if there is no recovery, they will not receive any attorneys' fees. If the Plaintiffs prevail and there is recovery, the Court will decide the amount of fees to be paid to their attorneys. The Court may order that attorneys' fees be paid from the money judgment entered in favor of Plaintiffs, or that they be paid separately by the Defendants, or some combination of the two.

Proposed Not. at 2, 3-4.

Defendants argue that the notice should disclose the "fee arrangement between [plaintiffs' counsel] and any prospective plaintiffs, as well as the percentage of any recovery that would be paid as attorney fees from any recovery by opt-in plaintiffs." See Opp. at 21. The notice as currently drafted, however, discloses that there is a contingent fee arrangement. Similar disclosures have been approved in other cases. See, e.g., Ni v. Red Tiger Dumpling House Inc, 2020 WL 7078533, at *11 (E.D.N.Y. Nov. 30, 2020). The real point of contention seems to be defendants' argument that the actual "percentage of any recovery" that will inure to the attorneys be specified in the notice. But the only case cite by defendants in support of this point, Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007), contains no such requirement. Additionally, "because this Court must approve the percentage of any settlement reached with the opt-in Plaintiffs which may be allocated to attorneys' fees" or approve an application for fees following a successful litigation of the case by the opt-in plaintiffs, "it is premature at this point to include that specific information in a Notice of Pendency." Ni, 2020 WL 7078533, at *11.

Second, defendants oppose the inclusion of employees who worked for defendants within three years before the filing date of the action, as opposed to two years, on the ground that plaintiffs failed to provide evidence that defendants' conduct was willful. See Opp. at 21-22. The statute of limitations under the FLSA is two years "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." See 29 U.S.C. § 255(a); accord Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009) ("The effect of a

willfulness finding is to extend the statute of limitations period from two to three years."). In light of the fact that plaintiffs have alleged willfulness in the complaint, see FAC ¶ 21, 37-83, similarly situated employees who were the victims of any willful violations throughout the three-year period should also receive notice. See, e.g., Johnson-Cradle v. KPS Affiliates Inc., 2023 WL 3091675, at *7 (S.D.N.Y. Apr. 26, 2023) ("In circumstances such as these, where the question whether Defendants willfully violated the FLSA remains disputed . . . , a three-year notice period is appropriate."); Onate v. AHRC Health Care, Inc., 2023 WL 3004966, at *6 (S.D.N.Y. Jan. 5, 2023) ("District courts thus 'routinely' apply the three-year statute of limitations to the notice period when plaintiffs plead a willful violation of the FLSA.") (citation omitted), adopted, 2023 WL 1861225 (S.D.N.Y. Feb. 9, 2023).

Conclusion

For the foregoing reasons, plaintiffs' motion to approve a collective action and for the sending of notice to the collective (Docket # 33) is granted.

SO ORDERED.

Dated:  New York, New York
       July 5, 2023

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge