UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

ISIDRO RECIO, DARIO ALMONTE,
RADHAMES RODRIGUEZ, JOSE
PICHARDO DE LA CRUZ, ULRICH
ZIMERMAN HERNANDEZ, and RAMON
MUNOZ, on behalf of themselves and all
others similarly situated,

     Plaintiffs,

   - against -

D'ALMONTE ENTERPRISES PARKING
GARAGE, INC., RAMCELL PARKING
CORPORATION, IB PARKING LOT, INC.,
119 PARKING LOT CORPORATION,
RAFAEL ALMONTE, DAYHANA
MARTINEZ, KELVIN MEJIA, ARIEL
REYES, and MIGUEL VELAZQUEZ,

     Defendants.

------------------------------------------------------------------------X

22 Civ. 6153 (RA) (GS)

OPINION AND ORDER

**GARY STEIN, United States Magistrate Judge:**

   This is a proposed collective and class action alleging improper wage-and-hour practices in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and New York Labor Law § 190 *et seq.* ("NYLL").  Pending before the Court is Plaintiffs' Motion for Leave to File a Second Amended Complaint to add claims for racial discrimination and hostile work environment on behalf of Plaintiff Isidro Recio ("Recio").  (Dkt. No. 57 ("Motion to Amend")).  For the reasons set forth below, Plaintiffs' Motion to Amend is **DENIED**.[1]

---

[1] Although the Second Circuit has not expressly decided whether a motion to amend a complaint is a dispositive or non-dispositive matter, "the weight of authority within this Circuit classifies a motion

1

BACKGROUND

A.  Plaintiffs' Wage-and-Hour Claims

On July 19, 2022, Plaintiffs Isidro Recio, Dario Almonte, Radhames Rodriguez, Jose Pichardo de la Cruz, and Ulrich Zimerman Hernandez initiated this action by filing a complaint. (Dkt. No. 1). Approximately four months later, on November 14, 2022, Plaintiffs filed a First Amended Complaint. (Dkt. No. 16 ("FAC")). Defendants are four corporate entities and five individuals who allegedly manage, supervise, and direct those entities' business operations: D'Almonte Enterprises Parking Garage, Inc., Ramcell Parking Corporation, IB Parking Lot, Inc., 119 Parking Lot Corporation, Rafael Almonte, Dayhana Martinez, Kelvin Mejia, Ariel Reyes, and Miguel Velazquez. (FAC ¶¶ 10, 13–19, 42, 56).

Plaintiffs allege they worked as parking attendants at various parking lots and garages Defendants own and operate in the Bronx, New York, and that they were subjected to various improper wage practices. (FAC ¶¶ 5, 10, 84–179). For instance, Plaintiffs allege that Defendants (i) routinely paid their employees exclusively in cash at a rate below minimum wage; (ii) required Plaintiffs to perform "off the clock" work without compensation; and (iii) deducted money from

---

to amend a pleading as non-dispositive." *Set Cap. LLC v. Credit Suisse Grp. AG*, No. 18 Civ. 02268 (AT) (SN), 2024 WL 20887, at *5 (S.D.N.Y. Jan. 2, 2024) (denying motion for leave to amend via opinion & order) (quoting *Trombetta v. Novocin*, No. 18 Civ. 993 (RA), 2021 WL 6052198, at *6 (S.D.N.Y. Dec. 21, 2021)); *see also Vyas v. Taglich Bros., Inc.*, No. 23 Civ. 8104 (AT) (KHP), 2023 WL 8810516, at *1 (S.D.N.Y. Dec. 20, 2023) (same); *Prosper v. Thomson Reuters Inc.*, No. 18 Civ. 2890 (MKV) (OTW), 2021 WL 535728, at *1 n.1 (S.D.N.Y. Feb. 11, 2021) ("Courts in this circuit generally treat motions to amend as non-dispositive pre-trial motions."). This is particularly true where, as here, the ruling on the motion is "based on procedural grounds" rather than on "a substantive evaluation of the viability of the proposed claim." *Rodriguez v. City of N.Y.*, No. 21 Civ. 1649 (AMD) (RLM), 2022 WL 22329900, at *1 n.2 (E.D.N.Y. Sept. 29, 2022). In accordance with this weight of authority, the undersigned resolves Plaintiffs' Motion to Amend by Opinion & Order.

Plaintiffs' weekly pay to cover damages to customer vehicles and customer underpayments. (*Id.* ¶ 71).

The FAC pleads six causes of action for violations of the FLSA and the NYLL. Specifically, Plaintiffs allege one cause of action under the FLSA for unpaid overtime compensation (*id.* ¶¶ 189–98) and five causes of action under the NYLL for (i) unpaid minimum wages (*id.* ¶¶ 180–88); (ii) unpaid overtime compensation (*id.* ¶¶ 199–210); (iii) unpaid spread-of-hours pay (*id.* ¶¶ 211–19); (iv) unlawful deductions from wages (*id.* ¶¶ 220–33); and (v) failing to furnish certain notices and statements required by the NYLL Wage Theft Prevention Act (*id.* ¶¶ 234–47).

In addition to the five original Plaintiffs, two other individuals, Ramon Antonio Muñoz and Ambiorys Peguro, filed consents in November 2022 to join the action as Plaintiffs pursuant to 29 U.S.C. § 216(b). (Dkt. Nos. 12, 15). Peguro, however, withdrew his consent in November 2023 and the parties stipulated to voluntarily dismiss his claims. (Dkt. No. 71).

### B.  Procedural History

Defendants answered Plaintiffs' initial Complaint on October 24, 2022. (Dkt. No. 10). Following an unsuccessful attempt at mediation (*see* Dkt. No. 20), Plaintiffs filed the FAC, as of right, within 21 days of Defendants' Answer. (*See* Dkt. No. 16; Fed. R. Civ. P. 15(a)(1)(B)). Plaintiffs' amendments bolstered their existing allegations but did not add any new causes of action or parties, or otherwise substantively change the nature of their claims. (*See generally* FAC). Defendants answered the FAC on November 28, 2022. (Dkt. No. 19).

On January 13, 2023, the parties jointly submitted a proposed Case Management Plan and Scheduling Order. (Dkt. No. 30). The form order they filled out included a deadline for the filing of amended pleadings; the parties left that item blank. (Dkt. 30-1 ¶ 7(b)). The parties proposed a deadline of November 17, 2023 for the completion of discovery. (*Id.* ¶ 8(a)).

After conducting an Initial Case Management Conference (*see* Minute Entry dated Jan. 18, 2023), Magistrate Judge Gorenstein, to whom this matter was originally designated (Dkt. No. 26), issued a Scheduling Order pursuant to Rule 16 of the Federal Rules of Civil Procedure on January 18, 2023, adopting the schedule proposed by the parties (Dkt. No. 31 ("Scheduling Order")). Consistent with the parties' proposal, the Scheduling Order included no deadline for filing amended pleadings. (*See id.*).

Thereafter, Plaintiffs moved for conditional approval of a collective action, pursuant to Section 216(b) of the FLSA. (Dkt. No. 33). On July 5, 2023, Judge Gorenstein granted that motion and authorized notice to be provided to other parking attendants employed by Defendants over the prior three years. (Dkt. No. 56). No other employees have joined the lawsuit since that time.

## C. Recio's Proposed Discrimination Claims

On October 3, 2023, Plaintiffs submitted their instant Motion to Amend (Dkt. No. 57), along with a proposed Second Amended Complaint (Dkt. No. 58-1 ("Proposed SAC")) and their brief in support (Dkt. No. 59 ("Br.")). The Proposed SAC adds eleven new paragraphs of factual allegations (Proposed SAC ¶¶ 84–94)

4

and three new causes of action brought solely on behalf of Plaintiff Recio against individual Defendants Almonte, Reyes, and Velazquez (*id.* ¶¶ 259–79).

In sum, the new allegations assert that Recio, who identifies as Black, felt "targeted and harassed" by Defendants Almonte, Reyes, and Velazquez because of his race. (*Id.* ¶¶ 86, 90–91). Recio alleges that during the course of his employment, which spanned six years from approximately February 2014 to March 2020, these individual Defendants instructed him "not to let Black or Puerto Rican customers into Defendants' parking garages" and complained if they "saw a Black or Puerto Rican customer retrieving their car." (*Id.* ¶¶ 86, 87, 89). Recio asserts causes of action for harassment, discrimination, and hostile work environment on the basis of race against Almonte, Reyes, and Velazquez under 42 U.S.C. § 1981 (*id.* ¶¶ 259–67) and Section 8-107 of the New York City Human Rights Law ("NYCHRL") (*id.* ¶¶ 268–79).[2]

On October 18, 2023, Defendants filed an opposition to Plaintiffs' Motion to Amend (Dkt. No. 64 ("Opp.")), along with affidavits from each of Almonte, Reyes, and Velazquez denying they made the racially discriminatory comments alleged by Recio (Dkt. Nos. 61–63). Plaintiffs filed a reply on October 24, 2023. (Dkt. No. 65 ("Reply")).

Plaintiffs submitted their Motion to Amend six weeks prior to the November 17, 2023 deadline for discovery set forth in the Scheduling Order. Since that time,

---

[2] It is unclear from the Proposed SAC what economic damages, if any, Recio is seeking from these alleged violations of Section 1981 and the NYCHRL. He does not claim that he left Defendants' employ due to the alleged discrimination or that his compensation was affected by it.

5

the parties have made multiple requests to extend the discovery deadline, which the Court granted, and raised several discovery disputes, which have now been resolved. (*See* Dkt. Nos. 66, 67, 74, 75, 79, 80, 86, 89). Discovery is now closed. (Dkt. No. 84).

## LEGAL STANDARD

"Motions for leave to amend are governed by one of two standards" under the Federal Rules of Civil Procedure: "Rule 15(a) or Rule 16(b)." *In re Wireless Tel. Servs. Antitrust Litig.*, No. 02 Civ. 2637 (DLC), 2004 WL 2244502, at *4 (S.D.N.Y. Oct. 6, 2004). Rule 15(a) instructs that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "This is a 'liberal' and 'permissive' standard," *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. Ltd.*, 797 F.3d 160, 190 (2d Cir. 2015)), and leave to amend under Rule 15(a)(2) "'should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, resulting prejudice to the opposing party,'" *AT&T Corp. v. Atos IT Solutions & Servs., Inc.*, No. 21 Civ. 4550 (VSB) (RWL), 2024 WL 379952, at *4 (S.D.N.Y. Feb. 1, 2024) (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603–04 (2d Cir. 2005)).

The "liberal" amendment period under Rule 15(a) ends "if the district court issues a scheduling order setting a date after which no amendment will be permitted." *Sacerdote*, 9 F.4th at 115 (citations omitted). After that point, the "stricter" standard of Rule 16(b) applies. *AT&T*, 2024 WL 379952, at 4. Under Rule

6

16(b)(4), a plaintiff may only amend a complaint after a scheduling order deadline "upon a showing of good cause." *Callahan v. Cnty. of Suffolk*, No. 22-969, 2024 WL 1161870, at *6 (2d Cir. Mar. 19, 2024) (citations omitted); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). Whether good cause exists depends on the "diligence of the moving party." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (citations omitted). The burden of demonstrating good cause rests with the movant. *Ramchandani v. CitiBank Nat'l Ass'n*, 616 F. Supp. 3d 353, 357 (S.D.N.Y. 2022).

Although the "primary consideration" under Rule 16(b) is "whether the moving party can demonstrate diligence," it is "not . . . the only consideration." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). "Rather, '[t]he district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors, including, in particular, whether allowing the amendment . . . will prejudice defendants.'" *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 175 (S.D.N.Y. 2014) (quoting *Kassner*, 496 F.3d at 244)). Indeed, where a party's motion to amend would require altering a court's scheduling order, "'the party must satisfy *both* Federal Rules of Civil Procedure 15 and 16 to be permitted to amend.'" *AT&T*, 2024 WL 379952, at *4 (quoting *Int'l Tech. Mktg., Inc. v. Verint Sys., Ltd.*, 850 F. App'x 38, 43 (2d Cir. 2021)) (emphasis in original).

"Ultimately, 'the decision as to whether to let Rule 16(b) stand as a bar to amendment lies within the court's discretion.'" *Mrani v. N.Y.S. Dep't of Corrections*

16(b)(4), a plaintiff may only amend a complaint after a scheduling order deadline "upon a showing of good cause." *Callahan v. Cnty. of Suffolk*, No. 22-969, 2024 WL 1161870, at *6 (2d Cir. Mar. 19, 2024) (citations omitted); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). Whether good cause exists depends on the "diligence of the moving party." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (citations omitted). The burden of demonstrating good cause rests with the movant. *Ramchandani v. CitiBank Nat'l Ass'n*, 616 F. Supp. 3d 353, 357 (S.D.N.Y. 2022).

Although the "primary consideration" under Rule 16(b) is "whether the moving party can demonstrate diligence," it is "not . . . the only consideration." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). "Rather, '[t]he district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors, including, in particular, whether allowing the amendment . . . will prejudice defendants.'" *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 175 (S.D.N.Y. 2014) (quoting *Kassner*, 496 F.3d at 244)). Indeed, where a party's motion to amend would require altering a court's scheduling order, "'the party must satisfy *both* Federal Rules of Civil Procedure 15 and 16 to be permitted to amend.'" *AT&T*, 2024 WL 379952, at *4 (quoting *Int'l Tech. Mktg., Inc. v. Verint Sys., Ltd.*, 850 F. App'x 38, 43 (2d Cir. 2021)) (emphasis in original).

"Ultimately, 'the decision as to whether to let Rule 16(b) stand as a bar to amendment lies within the court's discretion.'" *Mrani v. N.Y.S. Dep't of Corrections*

16(b)(4), a plaintiff may only amend a complaint after a scheduling order deadline "upon a showing of good cause." *Callahan v. Cnty. of Suffolk*, No. 22-969, 2024 WL 1161870, at *6 (2d Cir. Mar. 19, 2024) (citations omitted); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). Whether good cause exists depends on the "diligence of the moving party." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (citations omitted). The burden of demonstrating good cause rests with the movant. *Ramchandani v. CitiBank Nat'l Ass'n*, 616 F. Supp. 3d 353, 357 (S.D.N.Y. 2022).

Although the "primary consideration" under Rule 16(b) is "whether the moving party can demonstrate diligence," it is "not . . . the only consideration." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). "Rather, '[t]he district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors, including, in particular, whether allowing the amendment . . . will prejudice defendants.'" *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 175 (S.D.N.Y. 2014) (quoting *Kassner*, 496 F.3d at 244)). Indeed, where a party's motion to amend would require altering a court's scheduling order, "'the party must satisfy *both* Federal Rules of Civil Procedure 15 and 16 to be permitted to amend.'" *AT&T*, 2024 WL 379952, at *4 (quoting *Int'l Tech. Mktg., Inc. v. Verint Sys., Ltd.*, 850 F. App'x 38, 43 (2d Cir. 2021)) (emphasis in original).

"Ultimately, 'the decision as to whether to let Rule 16(b) stand as a bar to amendment lies within the court's discretion.'" *Mrani v. N.Y.S. Dep't of Corrections*

*& Community Supervision*, No. 21 Civ. 1072 (NSR) (AEK), 2023 WL 3736781, at *3 (S.D.N.Y. May 31, 2023) (quoting *Qanouni v. D&H Ladies Apparel LLC*, No. 18 Civ. 2763 (GBD) (DF), 2021 WL 9036182, at *8 (S.D.N.Y. Mar. 23, 2021)).

## DISCUSSION

In their briefs, both Plaintiffs and Defendants assume that the more liberal standard under Rule 15(a)(2) governs Plaintiffs' Motion to Amend. (*See* Br. at 2; Opp. at 8–9; Reply at 8). As discussed below, however, the Court finds the heightened good cause standard of Rule 16(b)(4) to be applicable based on the record in this action.[3] The Court finds that Plaintiffs' Motion to Amend does not satisfy either that standard or the Rule 15(a)(2) standard.

### A. Plaintiffs Do Not Satisfy the Rule 16(b) Standard

### 1. The Good Cause Standard Under Rule 16(b) Applies

The Scheduling Order in this case does not include a deadline for amendments to the pleadings. However, even where "the Court's previous scheduling orders [do] not explicitly provide a deadline by which the parties must amend their pleadings, Rule 16 may still apply 'where the record contains some indication that the court and the parties understood that the pleadings would not be further amended.'" *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16 Civ. 1318 (GBD) (BCM), 2020 WL 1659849, at *9 (S.D.N.Y. Apr. 3, 2020)

---

[3] The Court must evaluate a proposed modification of the Scheduling Order under Rule 16's good cause standard despite Defendants' failure to raise the issue. Even the agreement of the parties to modify a Scheduling Order is insufficient by itself to warrant a modification. *See* Fed. R. Civ. P. 16(b)(4) ("A schedul[ing] [order] may be modified only for good cause and with the judge's consent.").

8

(quoting *Point 4 Data Corp. v. Tri–State Surgical Supply & Equipment, Ltd.*, No. 11 Civ. 726 (CBA), 2012 WL 2458060, at *5 (E.D.N.Y. June 27, 2012)); *see also Berrio v. City of New York*, No. 15 Civ. 9570 (ALC) (RWL), 2018 WL 2388537, at *3 (S.D.N.Y. May 9, 2018) ("Where a scheduling order does not set forth a deadline by which to amend, the Rule 16 standard will apply if there was an understanding between the court and the parties that no further amendments would be brought.").

That is the case here. The parties submitted their proposed Scheduling Order after Plaintiffs had already amended their Complaint once. (*See* Dkt. Nos. 16, 30-1). The parties used a form order that included the following entry: "No amended pleadings may be filed after _____, without consent or leave of Court." (Dkt. No. 30-1 ¶ 7(b)). Although the parties filled in the surrounding deadlines, they submitted their proposed Scheduling Order without a date in the entry relating to amended pleadings. (*Id.*). Thereafter, the parties discussed the proposed Scheduling Order with the Court at the Rule 16 scheduling conference. The parties discussed discovery deadlines and anticipated motions but did not specifically discuss the blank entry for amended pleadings.[4] The Court then entered the Scheduling Order, omitting a deadline for amended pleadings. (Dkt. No. 31).

These circumstances strongly indicate that the parties and the Court understood there would be no further amendments to the pleadings. "Rule 16

---

[4] The Court has listened to the audio recording of the January 18, 2023 scheduling conference. The only mention of amendments came from Defendants' counsel, who referenced the fact that Plaintiffs had already submitted an amended Complaint.

9

requires the court to issue a scheduling order limiting 'the time to join other parties [and] amend the pleadings.'" *Berrio*, 2018 WL 2388537, at *3 n.4 (quoting Fed. R. Civ. P. 16(b)(3)(A)). Yet even after being invited by the form order to include such a deadline in the Scheduling Order, the parties chose not to. The absence of such a deadline is a clear indication that Plaintiffs, having already amended their Complaint once, did not contemplate a further amendment.

In analogous circumstances, courts in this Circuit have found there to be an understanding that no further amendments would be permitted. For instance, in *Point 4 Data Corp.*, the parties submitted a proposed scheduling order with the notation "N/A" following a prompt to set a deadline for amendments. *Point 4 Data Corp.*, 2012 WL 2458060 at *5. At a Rule 16 conference, the court "reviewed the parties' position with them and neither side objected or attempted to qualify in any way their representations" in the proposed order. *Id*. The court then issued a scheduling order without a deadline for amendments. *Id*. The court applied the Rule 16 standard when considering a subsequent motion to amend, reasoning that "the parties' failure to request a deadline for amending the pleadings does not leave the date open-ended, but rather means that this motion is brought out of time." *Id*. at *6 (citation omitted).

Accordingly, based on the record before the Court, the heightened standard under Rule 16 is appropriate here. *See id.* (citing cases for the proposition that "Rule 16's 'good cause' standard applies even though the resulting scheduling order does not specifically contain a deadline for amending the pleadings"); *see also Joint*

10

*Stock Co. Channel One*, 2020 WL 1659849, at *9 (applying the Rule 16 standard because "the parties' jointly-proposed deadline . . . had come and gone, and [a first amended complaint] had been filed [so] there was [] no need for the Court to include an explicit deadline to amend"); *In re Aluminum Warehousing Antitrust Litig.*, No. 13 MD 2481 (KBF), 2016 WL 1629350, at *5 (S.D.N.Y. Apr. 25, 2016) (applying the Rule 16 standard where the scheduling order did not "explicitly identify a cut-off date for further amendment of pleadings" based on "the clear implication" of the other express deadlines in the order and the context of how the litigation had progressed to that point) (emphasis omitted).[5]

### 2. Plaintiffs Did Not Act with the Required Diligence

The Court's primary consideration under Rule 16's good cause standard is whether Plaintiffs exercised diligence with respect to their discrimination claims. *Kassner*, 496 F.3d at 244. Plaintiffs "'must show that the deadlines could not have been reasonably met despite [their] diligence.'" *AT&T*, 2024 WL 379952, at *4 (quoting *Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland*, No. 09 Civ. 4622 (CS), 2010 WL 4968247, at *3 (S.D.N.Y. Nov. 24, 2010)) (cleaned up). "'A party is

---

[5] The Second Circuit's decision in *Sacerdote*, 9 F.4th at 114–16, is not contrary to the Court's conclusion. In *Sacerdote*, the Second Circuit reversed a district court's application of the Rule 16(b) standard in denying a motion to amend submitted after a deadline set by the scheduling order. *Id.* at 114. In so doing, *Sacerdote* found the scheduling order only set a deadline "for amending *without* leave of court," but set "no expiration date after which all amendments were prohibited, which would have triggered the stricter Rule 16(b)(4) 'good cause' standard." *Id.* at 115 (emphasis in original). The Second Circuit reasoned that "litigants are entitled to rely on the meaning suggested by the plain language of a court order" as the plaintiffs in *Sacredote* had done. *Id.* The Court does not believe that *Sacerdote* overruled the line of decisions applying Rule 16(b) where, as here, the scheduling order does not provide for *any* amendment of the pleadings, with or without leave of court, and the record indicates the parties and the Court did not anticipate amendments. Such circumstances are the functional equivalent of a scheduling order that expressly sets a date "after which no amendment will be permitted," the scenario in which, as *Sacredote* recognizes, the "good cause" standard of Rule 16(b) properly applies. *Sacredote*, 9 F.4th at 115.

11

not considered to have acted diligently where the proposed amendment is based on information that the party knew, or should have known, in advance of the motion deadline.'" *Id*. (quoting *Fresh Del Monte*, 304 F.R.D. at 174–75).

Plaintiffs do not demonstrate the required diligence here. The events giving rise to Plaintiffs' discrimination claims occurred at least two years before Plaintiffs initiated this action, and Recio was obviously personally aware of those events. All three of Plaintiffs' proposed causes of action (Proposed SAC ¶¶ 259–79) arise from Recio's allegations that Defendants made derogatory comments to him or in his presence about Black and Puerto Rican customers and thereby "created and fostered a hostile work environment based on race" (*id.* ¶¶ 87, 91, 92). Those alleged events all took place during Recio's employment with Defendants, which ended on approximately March 28, 2020. (*Id.* ¶ 86).

Thus, the factual basis underlying Recio's discrimination claims existed at the time Plaintiffs filed their original Complaint on July 19, 2022 (Dkt. No. 1), as well as when Plaintiffs filed their FAC about four months later (Dkt. No. 16). "When he commenced this action, therefore, [Recio] had all the information necessary to support [his discrimination] claim[s]," and consequently he has not shown "good cause" for his belated motion to amend. *Parker*, 204 F.3d at 340–41; *see also Charter Commc'ns, Inc. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 338 F. Supp. 3d 242, 256 (S.D.N.Y. 2018) (finding no diligence where "the essential facts related to Plaintiff's [proposed] claim have been known to Plaintiff since the outset of [the] litigation"); *Trezza v. NRG Energy, Inc.*, No. 06 Civ.11509

(PKC) (DF), 2008 WL 540094, at *6–7 (S.D.N.Y. Feb. 28, 2008) (denying motion to amend where "nothing in [plaintiff's] motion papers or in any of his other submissions to the Court suggests that he was unaware of the facts necessary to amend his pleading until after the deadline had passed").

Plaintiffs argue it was only during discovery in this case that the facts underlying Recio's discrimination claims "came to light." (Br. at 1; *see also* Reply at 1 (referring to "the events and facts that emerged during the course of conducting discovery which precipitated" the Motion to Amend)). On closer inspection, however, what Plaintiffs mean is that it was "[o]nly during the course of [] discovery [that] *counsel underst[ood]* that Plaintiff Recio had additional claims." (Br. at 3; emphasis added). That understanding came from counsel's interview with her *own* client, as she prepared a response to Defendants' interrogatories. (Goldstein Aff. (Dkt. No. 58) ¶¶ 5, 6). This fact pattern does not establish reasonable diligence or good cause within the meaning of Rule 16(b)(4). *See, e.g.*, *Britt v. Thermald Realty I, LP*, No. 13 Civ. 8289 (KPF), 2015 WL 4922977, at *6 (S.D.N.Y. Aug. 18, 2015) (finding plaintiff did not establish good cause where his counsel asserted "he was not aware of the extent and scope of . . . [the claim]" until his client's deposition); *Multi-Juice, S.A. v. Snapple Beverage Corp.*, No. 02 Civ. 4635 (RPP), 2005 WL 1138470, at *2 (S.D.N.Y. May 12, 2005) ("[c]ounsel's inadvertence or oversight is not good cause for purposes of Rule 16") (citation omitted).

Plaintiffs' argument is particularly perplexing given the following paragraph in Plaintiffs' *original* Complaint, which Plaintiffs do not address at all in their briefing:

> Defendant Rafael Almonte instructed Plaintiffs concerning the type of customers that should not be permitted to rent parking spaces in Defendants' garages, saying: "I don't want to rent to Black or Puerto Rican people here" or "Who let the Black guy in?"

(Dkt. No. 1 ¶ 41; *see also* FAC ¶ 45 (reiterating this allegation)).  These are, in essence, the same core factual allegations on which the discrimination claims in the Proposed SAC are based.  (*See* Proposed SAC ¶¶ 87, 89).  Thus, it is evident that not only Recio, but also Plaintiffs' counsel, were well aware of the facts underlying the proposed discrimination claims prior to discovery in this action.  *See In re Wireless Tel. Servs.*, 2004 WL 2244502, at *6 (good cause for proposed antitrust conspiracy claims lacking where allegations of conspiracy "were present in the plaintiffs' original pleading").

For the reasons above, Plaintiffs have failed to establish good cause, which is "'reason alone to deny leave to amend.'" *AT&T*, 2024 WL 379952, at *4 (quoting *Int'l Tech. Mktg.,* 850 F. App'x at 43).

### B. Plaintiffs Do Not Satisfy the Rule 15 Standard

The Court reaches the same result applying the Rule 15(a) standard.  Under Rule 15(a)(2), a court "may deny a motion for leave to amend 'where the motion is made after inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties.'" *Qanouni*, 2021 WL 9036182, at *6 (quoting *Grace v. Rosenstock*, 228 F.3d 40, 53–54 (2d Cir. 2000)).  In general, "'the

14

longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'" *Joint Stock Co. Channel One*, 2020 WL 1659849, at *8 (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46–47 (2d Cir. 1983)).

Here, this action was pending for over a year prior to Plaintiffs' submitting their Motion to Amend. As discussed above, Recio was aware of the basis for his proposed racial discrimination claims prior to bringing the action and he has failed to adequately explain his delay in asserting them. Thus, this factor weighs in favor of denying leave to amend. *See Morency v. NYU Hosps. Ctr.*, 728 F. App'x 75, 76–77 (2d Cir. 2018) (finding district court did not abuse its discretion in denying leave to amend "where nearly all of the relevant facts giving rise to [plaintiff's] potential whistleblower claim were or should have been peculiarly within [plaintiff's] possession [and] [plaintiff] failed to provide a satisfactory explanation for her nearly 13-month delay in seeking amendment") (citation omitted).

While "[d]elay alone . . . is an insufficient justification for the denial of a motion to amend under Rule 15(a)," *AT&T*, 2024 WL 379952, at *4, the Court also finds that Defendants would be prejudiced if Plaintiffs were permitted to assert their discrimination claims. "Courts regularly deny motions to amend where the moving party seeks to add claims involving collateral matters, based on different factual allegations and distinct legal theories, from the claims already at issue in a case." *Amusement Indus., Inc. v. Stern*, No. 07 Civ. 11586 (LAK) (GWG), 2014 WL 4460393, at *13 (S.D.N.Y. Sept. 11, 2014) (collecting cases). Thus, "[w]hen parties

15

move to add claims involving completely different factual allegations and legal theories from the underlying suit, courts may exercise their discretion to deny amendment in order to avoid unnecessary complexity and confusion." *Id*. at *15; *see id*. at *14 (denying leave to amend where "additional discovery will be required," "the parties are at the final stage of the litigation," and "the proposed claims have nothing to do with the claims currently being litigated") (citation omitted). That is the situation here. This is an FLSA wage-and-hours action (with overlapping pendent NYLL claims) brought on behalf of six Plaintiffs and other similarly situated employees. By contrast, the proposed racial discrimination claims would be brought on behalf of a single Plaintiff, Recio, and rest on entirely distinct factual allegations and legal theories. *See Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300, 1308-09 (D. Colo. 2015) ("discrimination and wage claims are two entirely distinct bodies of law, and there are important rationales for keeping them so").[6] If those claims were added to this case, the jury would have to be separately instructed on the complex legal theories relevant to discrimination and hostile work environment claims under Section 1981 and the NYCHRL, as well as, potentially, on the need to limit its consideration of evidence offered in support of those claims to certain defendants and/or causes of action. *See Amusement Indus.*, 2014 WL 4460393, at *15 ("'if the court determines that . . . the issues raised

---

[6] Notably, Recio does *not* contend that his wages were reduced because of the racial discrimination he allegedly experienced. *Cf. Munguia v. Bhuiyan*, No. 11 Civ. 3581 (JBW) (MDG), 2012 WL 526541, at *3 (E.D.N.Y. Feb. 16, 2012) ("plaintiff has sufficiently alleged that racial discrimination is relevant to the issue of plaintiff's wages because he alleges that defendants decreased his wages as a result of unlawful discrimination") (cleaned up).

by the amendment are remote from the other issues in the case and might confuse or mislead the jury, leave to amend may be denied'") (quoting 6 Wright & Miller, *Federal Prac. & Proc. Civ.* § 1487).

Moreover, Plaintiffs submitted their Motion to Amend with only a month and a half left before the discovery deadline. (*See* Dkt. Nos. 31, 57). Both Plaintiffs and Defendants have represented to the Court that at least some additional discovery, including depositions, would be needed if Plaintiffs are permitted to assert their discrimination claims.[7] This also weighing in favor of denying Plaintiffs' Motion to Amend. *See, e.g.*, *Amusement Indus.*, 2014 WL 4460393, at *13 ("courts have commonly denied motions to amend" where there is a risk of "unduly delaying the case by requiring the Court to reopen fact discovery to allow the parties to take depositions and obtain documentary evidence concerning" the new allegations) (collecting cases). "Although the burden of undertaking additional discovery, standing alone, does not warrant a denial of a motion to amend a pleading on the grounds of prejudice, . . . when that discovery addresses what is essentially a collateral matter—as it does in this action—denial is warranted." *Interpublic Grp. of Cos., Inc. v. Fratarcangelo*, No. 00 Civ. 3323 (SHS), 2002 WL 31720355, at *2 (S.D.N.Y. Dec. 4, 2002).

Accordingly, the Court finds that Plaintiffs do not satisfy the more lenient standard under Rule 15(a) because of Plaintiffs' unexplained delay in asserting

---

[7] Counsel for the parties so stated during a discovery dispute conference before the Court held on February 26, 2024. (*See also* Dkt. No. 66 (letter from counsel noting that additional depositions may be necessary if Plaintiffs' Motion to Amend is granted)).

17

their discrimination claims as well as the potential prejudice to Defendants. Whether considered as part of the Rule 16(b) analysis, or independently under Rule 15(a), these circumstances dictate that Plaintiffs' Motion to Amend be denied.[8]

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Amend is **DENIED**.

DATED:   New York, New York
         April 3, 2024

*[signature: Gary Stein]*

_____
GARY STEIN
United States Magistrate Judge

---

[8] Given this disposition, the Court need not address the parties' competing arguments as to futility. *See, e.g.*, *Darowski v. Wojewada*, No. 3:15 Civ. 803 (MPS), 2018 WL 2122822, at *3 (D. Conn. May 8, 2018). The Court does, however, note that Defendants' submission of affidavits disputing the factual accuracy of Recio's allegations was improper, *see, e.g.*, *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 257 (S.D.N.Y. 2012) ("[f]utility is generally adjudicated without resort to any outside evidence") (citation omitted), and the Court has not relied on those affidavits in deciding this motion.