UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------X

ISIDRO RECIO, DARIO ALMONTE,
RADHAMES RODRIGUEZ, JOSE
PICHARDO DE LA CRUZ, ULRICH
ZIMERMAN HERNANDEZ, and RAMON
MUNOZ, on behalf of themselves and all
others similarly situated,

            Plaintiffs,

    - against -

D'ALMONTE ENTERPRISES PARKING
GARAGE, INC., RAMCELL PARKING
CORPORATION, IB PARKING LOT, INC.,
119 PARKING LOT CORPORATION,
RAFAEL ALMONTE, and ARIEL REYES,

            Defendants.

------------------------------------------------------------------------------X

22 Civ. 6153 (GS)

ORDER APPROVING
SETTLEMENT

**GARY STEIN, United States Magistrate Judge:**

        The Court is in receipt of the parties' fully executed Settlement Agreement (the "Settlement Agreement") and counsel's letter seeking approval thereof pursuant to *Cheeks v. Freeport Pancake House Inc.*, 796 F.3d 199 (2d Cir. 2015). (*See* Dkt. No. 148). After carefully reviewing counsel's letter and the provisions of the Settlement Agreement, I find that the Settlement Agreement warrants approval under *Cheeks*.

        First, the economic terms of the Settlement Agreement, including the settlement amounts for each Plaintiff, the payment schedule, and Plaintiffs' remedies in the event of breach, are fair and reasonable. (*See* Dkt. No. 148 Ex. A §§ 7-8, 10 & Schedule A). I reach this conclusion for the reasons set forth in counsel's

1

letter (*see* Dkt. No. 148 at 3-6); based on my own assessment of the totality of the circumstances and consideration of the factors set forth in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012); and in light of my participation in the settlement negotiations between the parties, including a lengthy settlement conference conducted on May 13, 2025 (*see* Dkt. Entry for May 13, 2025).

In this case, Plaintiffs have already obtained partial summary judgment as to liability on certain (though not all) of their claims, so the risks of a completely adverse judgment at trial (from the Plaintiffs' perspective) are substantially mitigated. (*See* Dkt. No. 130). However, damages have not yet been determined as to any issue. (*Id.*). Under the Settlement Agreement, Plaintiffs collectively will receive $171,666.67 of the total settlement consideration of $280,000, with the remainder going for attorney's fees. (Dkt. No. 148 at 1-2 & Ex. A Schedule A). According to Plaintiffs' counsel, had Plaintiffs prevailed at trial on all issues on which they did not already obtain summary judgment, Plaintiffs stood to receive a damages award of $346,883.10 in unpaid wages that would double to $763,551.66 accounting for liquidated damages (exclusive of statutory penalties under the Wage Theft Prevention Act). (Dkt. No. 148 at 3). The net settlement proceeds of $171,666.67 thus represent nearly half of Plaintiffs' combined claims for unpaid wages and approximately 23% of their total alleged damages (exclusive of prejudgment interest and statutory penalties).

Moreover, as noted in counsel's letter, as a result of reviewing financial records for the Defendants, Plaintiffs faced an additional risk of collecting on

whatever judgment they might obtain through continued litigation. (*Id.* at 4). Because of Defendants' limited financial resources, the settlement has been structured so as to permit Defendants (after making an upfront payment of $90,200) to pay the remaining settlement amount in installments over the next 26 months. (*Id.* & Ex. A §§ 7.2-3). Certain of the Defendants have also executed Confessions of Judgment that would be triggered in the event of a default. (*Id.* Ex. A § 8). In light of all the circumstances, including Defendants' financial situation, I find the settlement to be a fair and reasonable compromise.

Second, I also find the non-economic terms of the Settlement Agreement to be fair and reasonable. Although the release of claims in Section 3 is non-mutual (Dkt. No. 148 Ex. A § 3), the scope of the release given by Plaintiffs is limited to the wage-and-hour claims that are the subject of Plaintiffs' lawsuit (*id.* § 2). Such a release does not run afoul of *Cheeks*. *See, e.g.*, *Flores Galloso v. 3821 Food Corp.*, No. 20 Civ. 1940 (RA), 2021 WL 860343, at *2 (S.D.N.Y. Mar. 8, 2021). Moreover, the Settlement Agreement contains no confidentiality or non-disparagement clause.

Third, the amounts payable to Plaintiffs' counsel for attorney's fees and costs are fair and reasonable. Plaintiffs' counsel will receive a contingency fee representing one-third of the total settlement amount and, in addition, costs in the amount of $15,000. (Dkt. No. 148 at 6). *See Vargas v. Pier 59 Studios L.P.*, No. 18 Civ. 10357 (VSB), 2021 WL 6066088, at *2 (S.D.N.Y. Nov. 4, 2021) ("courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases"). This case was vigorously and extensively litigated before it was settled,

3

having gone through full discovery encompassing, *inter alia*, 20 depositions, as well as a summary judgment motion. Plaintiffs' counsel has submitted timesheets indicating that their lodestar amounted to $435,369. (Dkt. No. 148 at 7 & Ex. B). Thus, the fees and costs awarded to Plaintiffs' counsel represents less than 25% of the lodestar. (*Id.* at 7).

Finally, the Settlement Agreement, which, as noted, contemplates that Defendants will pay the settlement amount in installments, provides for this Court to retain jurisdiction to resolve any claim arising from or relating to a breach of the Agreement. (Dkt. No. 148 Ex. A § 10). The Court finds it appropriate to retain jurisdiction in this case consistent with the Settlement Agreement.

Accordingly, the Settlement Agreement is hereby **APPROVED**.

DATED:   New York, New York
         September 9, 2025

_____
GARY STEIN
United States Magistrate Judge